(77 Misc. Rep. 44.)

## In re VAN DOREN et al.

(Surrogate's Court, Rockland County.   May, 1912.)

1. PERPETUITIES (§ 9*)—ACCUMULATIONS—STATUTORY PROVISIONS.

Where a residuary estate was devised and bequeathed in trust, with power to collect and receive the rents and profits, and pay to the son of testatrix for life the whole or such part thereof as the trustee in his discretion might think best, without express direction to accumulate the income, an implied accumulation arising from the exercise of the trustee's discretion was in contravention of Real Property Law (Consol. Laws 1909, c. 50) § 61, providing that all directions for the accumulation of the rents and profits of real property, except such as are allowed by statute, shall be void.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 67–73; Dec. Dig. § 9.*]

2. PERPETUITIES (§ 9*)—PERSONS ENTITLED—EXPIRATION OF TRUST.

Where a residuary estate was devised and bequeathed in trust, to collect and receive the rents and profits, and pay to the son of testatrix for life the whole or such part thereof as the trustee in his discretion might think best, with direction on the death of the son to divide the estate among his natural heirs, and in the exercise of the trustee's discretion a portion of the income was accumulated, which was not expressly disposed of by the will, it passed, under Real Property Law (Consol. Laws 1909, c. 50) § 63, providing that when there is a suspension of the power of alienation, during which the rents and profits are undisposed of, they shall belong to the persons presumptively entitled to the next eventual estate, to those entitled to the estate at the death of the son.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 67–73; Dec. Dig. § 9.*]

3. COURTS (§ 201*)—PROBATE JURISDICTION—CONSTRUCTION OF WILL.

In a proceeding for the judicial settlement of an executor's accounts, the Surrogate's Court has power to construe and to determine the validity of any provisions of a will, where the question is pertinent.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 86, 87; Dec. Dig. § 201.*]

4. WILLS (§ 529*)—CONSTRUCTION—ESTATES CONVEYED.

Where a will expressly declared that it was executed in duplicate, and the first duplicate directed a trustee, on the death of the son of testatrix, to divide the estate into seven equal shares, to pay two of them to one person, and one each to five others, naming them, and the second duplicate directed division of the estate into seven shares, but omitted the name of one of the legatees, and by a codicil, executed a few days later, directed that the estate be divided into six shares, instead of seven, as wrongly stated in the will, the word "seven" being a clerical error, testatrix intended by the execution of the codicil to reaffirm and republish the second duplicate as her will, except as changed by the codicil, and the estate should be divided into six shares, and paid to the legatees named in the second duplicate and codicil, except that the shares of a legatee now deceased must be paid to her personal representative, and surplus income arising from administration of the trust should be paid to the same persons in the same proportion.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1142; Dec. Dig. § 529.*]

Judicial settlement of the accounts of Charles L. Van Doren and another, as substituted trustees under the will of Lucilla S. Blanch. Decree entered.

Sullivan & Cromwell, of New York City, for Charles L. Van Doren, individually and as substituted trustee, and Anna M. Ackerman.

McGuire, Horner & Smith, of New York City, for Caroline F. David, individually and as administratrix, etc., of Charles F. Blanch, deceased, Julia H. Curtis, and Kate V. Foster.

Charles F. Cantine, for Edward L. Merritt, substituted trustee, and Mary F. Ruby, as administratrix, etc., of Mary K. Merritt, deceased.

Gabriel L. Hess, for Edward B. David.

McCAULEY, S.   There are two questions presented for my consideration upon this accounting. The first relates to the disposition of certain income, now in the hands of the substituted trustees, which arose during the continuance of a trust, but which was withheld from the beneficiary and allowed to accumulate. The second relates to the division and distribution of the residuary estate.

The testatrix died March 29, 1882, leaving a last will and testament, executed in duplicate, dated March 22, 1882, and a codicil, dated March 28, 1882. The duplicates bear the following indorsements, respectively: "Duplicate No. 1," and "Duplicate No. 2." The will created a trust for the benefit of Charles F. Blanch, a son, which embraced the residuum of the estate, and continued during her son's lifetime.

The first duplicate and the codicil were admitted to probate April 19, 1882, and the letters testamentary issued thereon to William C. Veghte, one of two executors named in the will; his co-executor having failed to qualify. The executor's accounts were judicially settled by a decree of this court, entered June 25, 1903, wherein it was provided, among other things, that the balance of the estate then in his hands, after deducting the costs and expenses of the accounting, be retained and administered by him, as trustee, agreeably to the provisions of the will and codicil. The executor accordingly became a testamentary trustee, and continued to act as such, and to administer the trust estate, until his death, which occurred December 20, 1910.

The trust terminated upon the death of the son February 4, 1911. The deceased trustee having failed to appoint his successor, pursuant to the authority given him, an application was made to this court for the appointment of a trustee or trustees to succeed him in the execution of the trust; and Charles L. Van Doren and Edward L. Merritt, whose accounts are now the subject of consideration, were appointed substituted trustees by a decree dated April 20, 1911. The administrator of the estate of the deceased trustee, on or about May 5, 1911, and thereafter, delivered to the substituted trustees trust funds, securities, and other property, amounting to the sum of $39,685.26. Of this amount approximately $10,000 represented income which had accumulated during the continuance of the trust.

To whom this accumulated income or surplus belongs is the subject of controversy. It is claimed on the part of certain contestants that as to it there was an intestacy, and therefore that it belongs to the next of kin; while the residuary legatees insist that it belongs to them, and should be distributed with and as if it were a part of the residuary estate. The solution of this question involves a consideration of the trust provision which is found in the fourth clause of the will, and which, so far as it is material to the inquiry, is as follows:

"Fourth. All the rest, residue, and remainder of my estate, real and personal, I give, devise and bequeath to the said William C. Veghte; and to such successor as he shall in his last will and testament appoint in the event of his decease prior to his complete execution of the trust hereinafter confided to him; to take the same and to collect and receive the rents, issues, income, increase and profits thereof, for and upon the issues following, to wit: To pay over to my dear son Charles F. Blanch, during the lifetime of my said son, the whole or such part of the rents, issues, profits and income of my estate as he, my said trustee, shall in his discretion think best for the real advantage and due maintenance of my said son; and, upon the death of my said son, I direct my said trustee to divide my estate among the heirs of the body of my said son, and to convey the same to them share and share alike per stirpes and not per capita; but should my said son die without lawful issue him surviving, I direct my said trustee to convert my estate into money, as speedily as may be, and to divide the same into seven equal shares or portions, and to pay over two of said shares or portions to Mary K. Merritt, and to pay over one of said shares or portions to my niece Anna M. Van Doren, and to pay over one of said shares or portions to my niece Katie V. Van Doren, and to pay over one of said shares or portions to Halsey H. David, and to pay over one of said shares or portions to Edward B. David, and to pay over one of said shares or portions to Julia H. Curtis."

[1] It is admitted that Charles F. Blanch never married and died without issue. The will, it is observed, clothes the trustee with a discretion as to the amount of income which he shall pay to the beneficiary. He is directed to pay over the whole or such part of the rents, profits, and income as he, in his discretion, shall think best for the real advantage and due maintenance of the son. The retention and accumulation of income, it is to be presumed, resulted from the exercise of this discretion. There is, however, no express direction for the accumulation of surplus income, and no express disposition thereof. The implied or contemplated accumulation is in contravention of the statute. It is provided by the Real Property Law (Laws of 1909, c. 52 [Consol. Laws 1909, c. 50] § 61) that:

"All directions for the accumulation of the rents and profits of real property, except such as are allowed by statute, shall be void."

The only directions for the accumulation of rents and profits of real property, that are allowed by statute, are those for the benefit of infants in being at the creation of the estate out of which the rents and profits are to arise.

[2] It is also provided by the same statute (section 63) that:

"When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the

continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

It is provided by the Personal Property Law (Laws of 1909, c. 45 [Consol. Laws 1909, c. 41] § 16) that an accumulation of the income of personal property directed by any instrument for the benefit of minors in being at the date of the instrument or the death of the person executing the same is valid; and it is therein further provided that:

"All other directions for the accumulation of the income of personal property, not authorized by statute, are void."

It has accordingly been uniformly held that the accumulation of income, whether from real or personal property, for any period of time except for the benefit of a minor as stated, is prohibited. St. John v. Andrews Institute, 191 N. Y. 254, 83 N. E. 981, 14 Ann. Cas. 708; United States Trust Co. v. Soher, 178 N. Y. 442, 70 N. E. 970; Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971; Cook v. Lowry, 95 N. Y. 103; Manice v. Manice, 43 N. Y. 303; Pray v. Hegeman, 92 N. Y. 508; Thorn v. De Breteuil, 179 N. Y. 64, 71 N. E. 470; Hascall v. King, 162 N. Y. 134, 56 N. E. 515, 76 Am. St. Rep. 302.

While an accumulation for the benefit of an unborn child, which commences after its birth and terminates during its minority, is lawful, the statute does not permit an accumulation for the benefit of an unborn child, where the accumulation is to commence before its birth. Manice v. Manice, supra; Kilpatrick v. Johnson, 15 N. Y. 322.

Obviously, implied accumulations are as much forbidden as express ones. There is no provision of the will expressly giving or bequeathing the accumulated income. To whom, therefore, does it belong? We must turn to the statute for an answer.

It is provided by statute that it belongs "to the persons presumptively entitled to the next eventual estate." The persons entitled to the next eventual estate are the persons entitled to the estate at the end of the period of accumulation. The court, in Manice v. Manice, supra, say:

"The statute does not say the ultimate, but the next eventual, estate; that is, the estate which is to take effect upon the happening of the event which terminates the accumulation. Those who presumptively will be entitled to receive the rents and profits, when the period of accumulation ends, are entitled to anticipate the event which is to terminate the accumulation, and to take at once the rents and profits which are undisposed of or unlawfully directed to be accumulated."

The period of accumulation terminated upon the death of Charles F. Blanch, who left no issue. The will, in that event, directs the trustee to convert the estate into money, divide the same into a certain number of shares, and to pay the shares to certain specified persons. The recipients of these shares are the persons who, in the language of the statute, are "entitled to the next eventual estate." They are consequently entitled, in similar proportions, to the surplus income.

Young v. Barker, 141 App. Div. 801, 127 N. Y. Supp. 211; Matter of Harteau, 125 App. Div. 710, 110 N. Y. Supp. 59; and cases above cited.

This brings us to a consideration of the question to whom and in what shares is the principal of the residuary estate payable?

[3] The determination of this question involves a construction of the will and codicil. The power of this court to construe a will in any proceeding touching the administration of the estate under it, and to determine the validity of any of its provisions, where that question is pertinent, is well settled. The general doctrine was stated by Gray, J., in Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599, thus:

"Though a judicial officer with limited and prescribed jurisdiction and powers, yet it is not open to question that in a proceeding before him, having for its object the settlement of an executor's accounts and to obtain a decree directing the distribution of the fund in his hands, and with all the parties in interest present, the surrogate may construe the provisions of the will, and determine the meaning and validity of any of them, whenever such a determination is necessary in order to make his decree as to distribution. Such a jurisdiction is, of course, not general; but it is one which is incidental to his office, and which flows clearly from the authority conferred upon him by the statute." Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388; Matter of Davis, 105 App. Div. 221, 93 N. Y. Supp. 1004; Kirk v. McCann, 117 App. Div. 56, 101 N. Y. Supp. 1093.

See, also, Code Civ. Proc. §§ 2472, 2481, 2812.

[4] It should be here remarked that in the opening clause the testatrix declares "the following to be my last will and testament, the same being by me executed in duplicate." It will be observed that the first duplicate, from which the preceding quotations are made, directs the trustee, in the event of the son's death without lawful issue, to convert the residuary estate into money, to divide the proceeds into seven equal shares, to pay two of the shares to Mary K. Merritt, and to each of five other persons, including Edward B. David, one share. This duplicate and the codicil have remained of record in the surrogate's office since they were probated April 19, 1882. The second duplicate was found by the substituted trustees among the papers turned over to them by the administrator of the deceased trustee. It was found, upon comparison, that the name of Edward B. David did not appear in the second duplicate as one of the persons entitled to a share of the residuary estate. It, like the first, directs the trustee, in the event of the son's death without lawful issue, to convert the residuary estate into money, divide the same into seven equal shares, pay two of the shares to Mary K. Merritt, and one share to each of the persons named in the first duplicate, except Edward B. David, whose name is omitted. Thus it will be seen that the seven shares into which the residuary estate is to be divided are bequeathed, by the first duplicate, to six designated persons, two shares to one, and one share to each of the five others, Edward B. David included; whereas, in the second duplicate, of the seven shares into which the estate is to be divided, only six are disposed of.

In all other respects the duplicates are precisely similar, and bear unmistakable evidence that they were written by the same person, at

the same time, and with the same pen and ink. To enable the court to ascertain the intention of the testatrix, and to insure the proper division and distribution of the estate, the second duplicate was offered for probate and admitted during the pendency of this proceeding. The well-understood primary rule is that the intention of the testator is to prevail, if it can be ascertained. Matter of Lally, 136 App. Div. 781, 121 N. Y. Supp. 467. To ascertain and give effect to the intention of the testatrix, these instruments must be read and construed in connection with the codicil. They together constitute but one instrument. Brown v. Clark, 77 N. Y. 378. A codicil is defined to be:

"A supplement or an addition to a will, or an explanation or alteration of the former dispositions of the testator, *and is to be taken as a part of the will, all making but one testament.*"

The codicil is not in the same handwriting as the duplicates, and bears date six days later. We quote from the codicil only so far as it will aid us in the solution of the question under consideration:

"This is a codicil to my last will and testament, and to be taken as part of the same, revoking said will only in so far as it may be consistent herewith.

"First. I hereby revoke my said last will (which is dated the twenty-second of March, one thousand eight hundred and eighty-two), in so far as the same directs the payment of one of the shares of my estate to Halsey H. David, and hereby direct that the share then given to said Halsey shall be given to my nephew, Chas. L. Van Doren, instead of said Halsey, and also direct that the number of shares therein directed to be divided shall be six instead of seven as wrongly stated in said will; the word 'seven' being a clerical error therein."

Now, what was the intention of the testatrix, in the event of her son's death without issue, as expressed in the instruments before us, with respect to the division and distribution of her residuary estate? The inquiry suggests two questions, namely: (1) Into what number of shares did she intend the estate to be divided? (2) To whom did she intend to give these shares?

The first duplicate, as already stated, directs the division of the estate into seven shares, and bequeaths all of them, giving to one legatee two, and to each of five others one share. The second duplicate directs the division of the estate into seven shares, but bequeaths only six shares; the name of Edward B. David being omitted as one of the legatees. The codicil, however, directs that the estate be divided into six shares, "instead of seven, as wrongly stated in said will; the word 'seven' being a clerical error therein." Obviously the testatrix had before her, at the time of the execution of the codicil, one or both of the duplicates; for not only does she direct the division of the estate into six shares, but expressly declares that her intention was wrongly stated in the will, and that the word "seven" was a clerical error.

The codicil, being the latest expression of the testatrix with respect to the number of shares into which her estate is to be divided, must be deemed to control. The first duplicate and the codicil are contradictory, and cannot be reconciled; for not only does that duplicate

divide the estate into seven shares, but it disposes of seven shares. The second duplicate, as amended, and the codicil, do harmonize, and are in no sense contradictory, and, taken together make a testament the meaning of which is clear and intelligible. The statement in the codicil that the word "seven" was wrongly used in the will to designate the number of shares into which the estate is to be divided, if applied to the second duplicate, is true, because in that duplicate only six shares are disposed of; but, if applied to the first duplicate, it would not be true.

It is a well-settled rule of interpretation of wills that, even where there are two permissible constructions of the language of the testator, that will be adopted which will uphold rather than destroy the will. Jacoby v. Jacoby, 188 N. Y. 124, 80 N. E. 676; Matter of Lally, 136 App. Div. 781, 121 N. Y. Supp. 467; Matter of Hinchman, 141 App. Div. 95, 125 N. Y. Supp. 699. I am therefore of the opinion, based upon the language of the codicil, that the second duplicate, at the time of its execution, expressed the real purpose and intention of the testatrix, save only in its designation of the number of shares into which the estate was to be divided, and that by the execution of the codicil she intended to reaffirm and republish that duplicate as her will, except in so far as its provisions were changed by the later instrument. The execution of the codicil amounts to a republication of the will to which it relates, and makes it speak as of the date of the codicil. Brown v. Clark, supra.

How it came to pass that the name of Edward B. David appeared as a residuary legatee in the first duplicate, but not in the second, one can only conjecture. The draftsman was not produced as a witness, nor, indeed, is there any evidence before me of the circumstances attending the preparation of the duplicates. In the view which I have taken of the case, however, it is unnecessary to attempt the solution of this riddle. The codicil, in express terms, revokes the gift of one share to Halsey H. David, and I think the fair and reasonable interpretation of the instruments, when read together, is that the testatrix also intended that Edward B. David should not share in the distribution of her estate.

My conclusion is that the estate should be divided into six equal shares, and paid to the residuary legatees named in the second duplicate and codicil, as therein provided, except that the two shares bequeathed to Mary K. Merritt, now deceased, must be paid to her personal representative, and that the surplus income should be divided and paid over to the same persons, in the same proportionate amounts.

Decree and findings, in accordance with the views herein expressed, may be presented for entry upon three days' notice.

Decreed accordingly.