In the Matter of the Application of THE REAL ESTATE TITLE INSURANCE AND TRUST COMPANY OF PHILADELPHIA and HENRY M. DuBois, as Trustees under the Last Will and Testament of ELIZABETH P. BOGGS, Deceased.

Surrogate's Court, Greene County, December, 1923.

Wills — construction — when lapsed legacies inure to benefit of general residuary legatees.

Trusts — failure to provide for disposal of income in case of death of beneficiaries during life of trust — when income payable to those presumptively entitled to the next eventual estate — when administrator of beneficiary who died after testatrix is entitled to receive the income during the continuance of trust which would have been payable to his intestate if living — Real Property Law, § 63.

All legacies which lapse or prove ineffectual inure to the benefit of the general residuary legatee unless a clear intention to the contrary is shown by the will.

Testatrix by the 4th paragraph of her will devised her undivided right, title and interest in certain real property, in trust during the lives of her sister A. and her brother D., with direction to pay over from the net rents, issues and profits of the trust estate, $3,000 annually to said sister, and $1,500 annually to said brother during their respective lives. During the continuance of the trust the payment of $400 annually to the niece of testatrix and of $600 annually to the nephew of testatrix was also directed. The will, however, did not

provide for the disposal of the income in case of the death of any of the bene-
ficiaries named in said paragraph of the will, during the life of the trust. All
the rest, residue and remainder of the net rents, issues and profits of the trust
estate was bequeathed to J. and D., the two brothers of testatrix, and to A. and
G., her two sisters, her nephew and her niece, share and share alike. In the
event that a sale of the property became necessary or advisable before the
termination of the trust, the trustees were by the 5th paragraph of the will
given power to sell the property and to hold and invest the proceeds of sale,
for the purposes of the trust set forth in the 4th paragraph of the will. The
6th paragraph of the instrument provided for a sale by the trustees of the
right, title and interest of the testatrix in said real property upon the death of
A. and D. if still held by the trustees, with direction that after paying the
necessary expenses incident to the sale and the expenses of administering the
trust, to pay the net proceeds of said sale to certain designated persons in
specific amounts. By the 7th paragraph of the will testatrix devised and
bequeathed all the rest, residue and remainder of her real and personal property
to several charitable and benevolent institutions and directed her executors as
soon as possible after her death to sell all of her diamonds and jewelry for the
best price obtainable, the net proceeds to fall into and become part of her
residuary estate. The testatrix's brother J. predeceased her and though her
sister G. survived her, she died intestate. In a proceeding instituted by the
testamentary trustees for a construction of the will, *held*, that the legacy to
J. lapsed and the income received and accumulated which would have been
payable to him, if living, should be paid to the residuary legatees and devisees
named in the 7th paragraph of the will, they being presumptively entitled to the
next eventual estate.

The testatrix's sister G. having survived her had a vested interest in the rents
and profits in question during the life of the trust and she having died intestate
such right or interest passed to her administrator during the life of the trust
and he was entitled to take the remainder of the income as it should become
payable by reason of the fact that he is acting as administrator of the person
to whom the rents, issues and profits were payable during the continuance of
the trust, or if she is presumptively entitled to the "next eventual estate" such
income is payable to her administrator.

Section 63 of the Real Property Law does not create any interest or right not given to
a legatee, devisee or interested party that he is not given by the express terms
of a will or by the Statute of Descent and Distribution, and the persons pre-
sumptively entitled to the next eventual estate as defined in said section 63 are
those who are entitled to the estate which is to take effect at the end of the period
during which the rents and profits are undisposed of or are validly accumulated.

PROCEEDING by trustees for construction of a will.

*Lee F. Betts*, for trustees.

*Osborn, Bloodgood, Wilbur & Fray*, for Daniel B. Tamagno,
individually and as administrator of Grace Tamagno, deceased.

*F. Granville Munson*, for the National Soldiers' Home, otherwise
known as the United States Soldiers' Home.

*Francis J. Hogan*, for St. Joseph's Home of Flushing, N. Y.

*Percy W. Decker*, special guardian for Paul Tamagno and Claire
Tamagno, infants.

Misc. 73]        Surrogate's Court, Greene County, December, 1923.

TALLMADGE, S.    Elizabeth P. Boggs died June 13, 1918.    Her will was admitted to probate by the Surrogate's Court of Greene county September 3, 1918.

By the 4th clause of the will the testatrix devised and bequeathed her right, title and undivided interest in real property in Philadelphia, Penn., to the Real Estate Title Insurance and Trust Company of Philadelphia, and Henry M. DuBois, attorney at law, of the same place, to hold said property in trust during the lives of her sister Anna C. Tamagno and her brother Daniel B. Tamagno, with directions to collect the rents, issues and profits arising therefrom and after paying all necessary repairs, taxes and water rents chargeable to her interest in said real estate and after paying all charges incident to the administration of the trust to pay over the net rents, issues and profits therefrom to the following named persons in the following amounts:    $3,000 annually to her sister Anna C. Tamagno during her life, said sum to be paid in monthly installments; $1,500 annually to her brother Daniel B. Tamagno during his life in semi-annual payments, free from liability for his debts, contracts and obligations and free from all attachments, assignments and executions; $400 annually in semi-annual payments to her niece Claire Tamagno during the continuance of the trust; $600 annually in semi-annual payments to her nephew Paul Tamagno during the continuance of the trust.    All the rest, residue and remainder of the net rents, issues and profits arising from said real property during the continuance of the trust to the following named persons:    To her brothers John D. Tamagno, Daniel B. Tamagno, her sisters Anna C. Tamagno and Grace Tamagno, her nephew Paul Tamagno and her niece Claire Tamagno, share and share alike.

By the 5th clause of the will it is provided that if it shall become necessary or advisable to sell the said property before the termination of the trust, the trustees are empowered to sell the same and to hold and invest the proceeds of the sale for the purposes of the trust set forth in the said 4th paragraph of the will.

By the 6th clause of the will it is provided that upon the death of the said Anna C. Tamagno and Daniel B. Tamagno, when said trust shall terminate, the right, title and interest of the testatrix in said real estate shall be sold by the trustees, if the said real estate is still held by them and after deducting the necessary expenses incident to said sale and the expenses of administering the trust, to pay the net proceeds from said sale to the following named persons and in the following amounts:    To her niece Claire Tamagno the sum of $15,000 absolutely; to her nephew Paul Tamagno the sum of $20,000 absolutely; to Margaret Towey, if

in her employ at the time of her death and if living at the termination of said trust, $1,500 absolutely; to her sister Grace M. Tamagno the sum of $3,000 absolutely; to Flushing Hospital and Dispensary of Flushing, Queens county, the sum of $5,000 to endow a bed therein in memory of her deceased husband, Major Thomas K. Boggs, and the further sum of $5,000 to endow a bed therein in memory of herself; to St. Joseph's Home in Flushing the sum of $1,000; to the Covent of the Immaculate Heart of West Chester, Penn., the sum of $1,500; to the Church of the Immaculate Conception of Haines Falls, N. Y., the sum of $1,000; to Elizabeth Marshall, wife of Elder Marshall of Edgewood, Penn., the sum of $10,000 absolutely, if she survives the testatrix; if she dies before the death of the testatrix then the said sum of $10,000 is bequeathed to her two daughters, Janice and Elizabeth Marshall, share and share, alike; to the Flushing Hospital and Dispensary, located at Flushing, Queens county, N. Y., the sum of $1,000, in trust to invest the same and to collect and apply the interest and income therefrom for the general uses and purposes of said institution and which trust is to be designated and known as "The Thomas K. Boggs Trust" in memory of her said husband; to Thomas B. Lowerre, if he survives the testatrix, the sum of $5,000 absolutely; if he dies before the testatrix then she gives the same to his children absolutely in equal shares, and to the surviving issue of any deceased child or children of such surviving issue only to take and have such part or share as his, her or their deceased parent would have taken if he or she had been living at the time of testatrix's death; to pay to Imogene K. Hegeman, of Flatbush, Queens county, N. Y., the sum of $1,000 absolutely.

By the 7th clause of the will, all the rest, residue and remainder of all her real and personal property she gives and bequeaths as follows: To the National Soldiers' Home located at Washington, D. C., one-half portion of her residuary estate absolutely, in trust, to invest the same and collect and pay the interest and income therefrom for the general uses and purposes of said home, to be known and designated as "The Thomas K. Boggs Trust" in memory of her husband; to the "Servants of Relief of Incurable Cancer," located at Hawthorne, N. Y., one-quarter portion of her residuary estate absolutely, in trust, to invest the same and collect and pay the interest and income therefrom for the general uses and purposes of said institution, to be known and designated as "The Caroline M. Boggs Trust," in memory of her said husband's mother; to the New York Association for the Blind, located at 232 East Fifty-ninth street, borough of Manhattan, New York city, one-quarter portion of said residuary estate absolutely, in

trust, to invest the same and collect and pay the interest and income therefrom for the general uses and purposes of said association, to be known and designated as "The Eliza B. Tamagno Trust," in memory of her mother. She directs her executors to sell at either public or private sale for the best price they can obtain for the same as soon as possible after her death all her diamonds and jewelry and the net proceeds of said sale to fall into and become part of her residuary estate.

John D. Tamagno died intestate before the testatrix.

Grace Tamagno survived the testatrix but died intestate October 25, 1921. Letters of administration on her estate were issued by the New York County Surrogate's Court on August 4, 1922, to Daniel B. Tamagno. It appears that the trustees have in their hands an income balance of approximately $4,399.40 of which $2,885.12 represents the net income of the trust which would be payable to John D. Tamagno if living and $1,514.28 represents the net income of the trust which would be payable to Grace Tamagno if living.

I am asked to determine two questions: *First*, who is entitled to receive the income received and accumulated, which would be payable to John D. Tamagno if living; *second*, who is entitled to receive the income for the remainder of the trust period which would be payable to Grace Tamagno if living.

"The supreme test of testamentary construction is the intention of the testator." *Rezzemini* v. *Brooks*, 118 Misc. Rep. 791, 793; *Central Trust Co.* v. *Egleston*, 185 N. Y. 23, 29.

Each will must be read and construed with reference to its peculiar provisions. *Hodgman* v. *Cobb*, 202 App. Div. 259, 264.

After a careful reading of the whole will the scheme of the testatrix seems to be clear and her intention manifest. She owned some personal property and an interest in the real estate in Philadelphia. She had brothers and sisters and a nephew and niece that she wished to provide for, and after making it clear that the expenses and all taxes should be properly taken care of so as to in no way hamper or embarrass her beneficiaries under her will, she places in the hands of her trustees the real estate owned by her to be held by them during the lifetime of two persons in being, evidently for the purpose of providing annual incomes to two of the persons named during the continuance of the trust, and to two of the persons during life. It will be noted that the testatrix makes no provision whatever for the disposal of the income by the terms of the will in case of the death of any of the beneficiaries named in this clause of the will during the life of the trust. She, however, does discriminate as between the beneficiaries when she gives to

Surrogate's Court, Greene County, December, 1923.        [Vol. 122

her sister Anna C. Tamagno annually the sum of $3,000 during her life and to her brother Daniel B. Tamagno the sum of $1,500 during his life. Claire Tamagno she gives the sum of $400 during the continuance of the trust. In the same manner she gives to Paul Tamagno $600 during the continuance of the trust. She evidently had in mind a distinction or a desire for a different disposition of a portion of the fund, some of it during the lifetime of the persons named and others during the continuation of the trust. After making such payments it is provided that the rest, residue and remainder of the net rents, issues and profits arising from said real property is to be paid to her brothers John D. Tamagno, Daniel B. Tamagno and her sisters Anna C. Tamagno and Grace Tamagno, her nephew Paul Tamagno and her niece Claire Tamagno, share and share alike.

Each of the legatees who take the residue are to take the same during the continuance of the trust. In another clause of the will she seems to be careful as to the disposition of the property in case of the death of the parties named.

Her intention evidently was that these beneficiaries should have the benefit of the rents, issues and profits in the manner designated by her until the death of the life beneficiaries or until the falling in of the trust and at the end of the trust period she then by a clear provision of her will directs the sale of her real property and from the proceeds of the sale she fixes the definite amounts to be paid from that particular property to the legatees therein named, and after they have been paid the amounts specified, the rest, residue and remainder of all of her property, both real and personal, is given to the residuary legatees named in her will and she seems to be particularly interested in the residue and in the manner of disposing of the property that is left to such residuary legatees. The amount given to the Soldiers' Home is to be known and designated as " The Thomas K. Boggs Trust," and the amount given to the " Servants of Relief of Incurable Cancer " is to be designated as " The Caroline M. Boggs Trust," and the amount given to the New York Association for the Blind is to be designated as " The Eliza B. Tamagno Trust," so that she evidently expected a substantial residuum for the purpose of properly taking care of the residuary legatees.

John D. Tamagno died before the testatrix. He was one of the six residuary legatees of income. The legacy to him lapsed. It is clearly settled that in a will of personal property a general residuary bequest carries to the residuary legatees all the personal property of the testator which is not otherwise disposed of by the will, including all lapsed legacies, unless a clear intention to the contrary

is shown by the will. Numerous cases hold that if a legacy of personal property lapses or· proves ineffectual the subject-matter thereof will inure to the benefit of the general residuary legatee, if there is one, and not to the testator's next of kin or heirs at law. *Matter of King*, 200 N. Y. 189.

I am asked to determine who is entitled, not to the ultimate payment of the surplus income, but to the present payment, and it is contended that section 63 of the Real Property Law is controlling in this case. Such section provides that when in consequence of a valid limitation of an expectant estate there is a. suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate.

It is the law that when it is ascertained where or to whom such property is payable, the amount may be paid at once or as fast as the rents and profits accumulate. Who then represents the next eventual estate? If I take into consideration the intent of the testatrix as well as the different decisions bearing upon the question I think in this case that I can arrive at a satisfactory conclusion.

It is contended by the attorney for the residuary legatees that such residuary legatees represent or are the parties presumptively entitled to take, while on the other hand the attorney for the administrator contends that the legatees who would be interested in the moneys arising from the corpus of the estate when sold are entitled to the next eventual estate.

I am referred to *Matter of Harteau*, 204 N. Y. 292, and it is strenuously urged that the decision in that case is controlling in this case. I am also referred to *Matter of Kohler*, 231 N. Y. 353.

In *Matter of Harteau*, to which I am referred, the whole scheme and object of the decedent was to provide a fund for the payment of an annuity to his wife for life, and to his sister Frances Wheeler, and his niece, the contestant, his only heirs at law and next of kin, and the preservation meantime of his wife's home in the city and his country home. To accomplish this object he had given not only the income but so much of the principal of the estate from time to time as may be necessary. The residue of his estate after his wife's death was for the erection of a statue of Lafayette and after that was fully accomplished the residue, if any, to be divided among certain charities as named in the 12th clause of the will. By the 11th clause of the will it was provided: " Upon the death of my said wife, Margaret N. Harteau, and the other provisions of this my last Will and Testament having been complied with,

Surrogate's Court, Greene County, December, 1923.     [Vol. 122

I direct that my surviving executors shall devote and appropriate from the general fund of my estate the sum of thirty-five thousand dollars ($35,000) to be expended in the erection of a statue of General, the Marquis De Lafayette, to be placed in Prospect Park, Brooklyn," etc. Other legacies were given by the will. Whatever sum remained in the estate after the statue was erected was to be applied, *first*, to the payment of $200 to the town library of Lee, Mass., and then in the proportion of one-fifth each to the different eleemosynary institutions. It appeared that there were accumulations to the amount of $17,722.39 that had to be disposed of and the question arose to whom the accumulations should be paid. It was held that inasmuch as the $35,000 was to be paid from the general funds and was to be first paid after the death of the wife from the general fund, the city was entitled to the fund as representing the next eventual estate, and not the residuary legatees.

It will be noted that this decision throws some light upon section 63, which has seemingly been misunderstood in some of the decisions that have been rendered. The next eventual estate is represented by one who has an estate in expectancy which grows either out of the language of the will or under some statute. Where an amount is given to a legatee which is definite and fixed, such amount can in no manner be increased nor was it intended by section 63 that the next eventual estate should take as a gift under section 63 what they would not be entitled to under the terms of the will or under the Statute of Distributions. That section is intended to designate the particular person who is to receive the funds that are not otherwise disposed of and it is given rather as a definition or for the purpose of designating the particular person, but does not in any manner give any extra amount or additional amount to a legatee whose legacy is fixed by the terms of the will.

The *Harteau* case decides that the amount received by the executors and trustee as proceeds of the surplus dividends belonged to the city and must be paid by the executors to the city (for the purpose of erecting the monument) *and credited on account of the legacy for the statue,* and if that case is applied to the case that we are considering the result would be that the accumulated rents and profits in the hands of the trustees would be applied in proportion to the amount of the definite legacies given to each of the legatees, on the sale of the real estate, named in the will of the decedent to be credited upon the amounts that they would be entitled to receive at the end of the trust upon the sale of the real property.

The difference between the two cases is that the legacy in the *Harteau* case was to be paid to a legatee out of the general fund,

which legacy was first payable by the terms of the will. In the case we are considering the legacies or amounts payable were to individuals who are to receive definite amounts from the proceeds of the sale of the real property. Their rights are circumscribed and are confined to the amounts designated in the will, to come out of the corpus of the property, and it is clear that the testatrix did not intend that they should receive any greater amount and that the method and manner in which these legatees should receive the amounts were defined.

Persons presumptively entitled to the next eventual estate are those who are entitled to the estate which is to take effect at the end of the period during which the rents and profits are undisposed of or are not validly accumulated. Under this definition or statement the person to take must be entitled to the estate, or at least an interest in the estate which has reference to the particular property to be disposed of and in this case the particular property to be disposed of is the rents and profits. The legatees to whom are payable the several amounts after the property is sold out of the corpus of the estate cannot be said to have any interest in these rents and profits because their only interest is their definite interest to be paid from the corpus of the estate and not from the rents and profits. In order to make the matter clearer, if possible, section 63 of the Real Property Law does not create any interest or right not given to a legatee, devisee or interested party that he is not given by the express terms of the will or by the Statute of Descent and Distribution. It is not a statute that fixes the rights of parties but designates the persons who shall receive the funds under the law and this statute does not give to a legatee any greater amount than he is entitled to receive under the terms of the will. In other words, we cannot select a person who is named in the will and given a legacy as a person presumptively entitled to the next eventual estate and say that he is entitled to the accumulations, excepting that he may be entitled to receive the same instanter or at some future time but only then to be applied towards the payment of the legacy given to him. If we study the language and meaning in the *Harteau* case we find that although the court directed the sum of $17,722.39 to be paid to the city of New York towards the erection of the Lafayette monument said amount was only to be credited towards the payment of such legacy and the residuary legatees would be the recipients ultimately of practically the same amount that they would have been paid had it been decided that the residuary legatees **were** entitled to the next eventual estate.

6

Surrogate's Court, Greene County, December, 1923.          [Vol. 122

This is not an estate in expectancy to or in which they can in any manner take the rents and profits accumulated and their estate in expectancy is only in the corpus of the property which is measured by a definite amount.

The presumption does not arise in this case that the donor of the property may naturally be supposed to intend that the income should go to the same person to whom the land is given out of which the income arises because in this case such a presumption would be in direct conflict with the express language of the will, which gives to the legatees named only the proceeds arising from the corpus of the estate which is fixed and definite.

If such presumption could arise it would be in favor of the residuary legatees who take all the proceeds of the real estate and all other property after the definite amounts are paid to the legatees out of the corpus of the real estate.

After considering *Matter of Kohler, supra,* I am satisfied that the facts in that case are so different that the decision would not apply to this case. Even under that case, Chase, J., who wrote the opinion, expressed his views, in effect, that the persons presumptively entitled to the next eventual estate, so far as the trust funds for the purpose of providing the $25,000 a year to each of the children is concerned, are the persons entitled to such trust funds upon the death of the daughters respectively. He further states (p. 377): "A majority of my associates, however, are of the opinion that, inasmuch as the trustees are only entitled strictly to set aside a trust fund sufficient to produce an annual income of $25,000 in the case of each beneficiary named, any income which may have accumulated between March 16, 1915, and the date when the trusts are actually set aside, or which may be produced after the trusts are set aside in excess of what has been required or may be required to make said annual payment of income provided by the will, should be treated as part of the net residuary estate and be paid over under clause eighteen thereof."

It is stated in *Manice* v. *Manice,* 43 N. Y. 303, 385: "Those who presumptively will be entitled to receive the rents and profits when the period of accumulation ends, are entitled to anticipate the event which is to terminate the accumulation and to take at once the rents and profits which are undisposed of or unlawfully directed to be accumulated." The legatees named cannot be said to be presumptively entitled to take rents and profits to which under no circumstances will they at any time become entitled and when there remains as the next eventual estate only the residuary legatees.

It is held in *Crerar* v. *Williams,* 145 Ill. 625; 21 L. R. A., 454;

28 R. C. L. ¶ 334, that the law raises a presumption in favor of the residuary legatee against every one excepting a particular legatee.

Gray, J., in *Riker* v. *Cornwell*, 113 N. Y. 115, 127, states the rule plainly, as follows: "I think the doctrine is firmly established, by the reported cases and by the text-books, that where the residuary bequest is not circumscribed by clear expressions in the instrument and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions or other accident."

I am, therefore, of the opinion that the rents and profits we have been considering should be paid to the residuary legatees and devisees named in the 7th clause of the will, they being presumptively entitled to the next eventual estate.

The next question that I am asked to consider and determine is the proper disposition to be made of the rents and profits which were given by the terms of the will to Grace Tamagno, one of the six residuary legatees of income under the 4th clause of the will, share and share alike.

She died after the death of the testatrix. It appears from the briefs of the attorneys that at the time of the verification of the petition there was $1,514.28 of net income in the hands of the trustees (which would belong to Grace Tamagno, if living), received since October 25, 1921, the date of the death of Grace Tamagno. As the trust does not terminate until the death of both Anna C. Tamagno and Daniel B. Tamagno the estate of Grace Tamagno may have a very substantial interest in the income which may hereafter arise. The testatrix in disposing of her property and the rents and profits of her real estate clearly defines what interest the several legatees of the income were entitled to receive and she seems to discriminate between Anna C. Tamagno, Daniel B. Tamagno and the other residuary legatees. To Daniel B. Tamagno she directs the amounts of the rents and profits payable to him to be paid during his life and also the rents and profits payable to Anna C. Tamagno during her life. To the others named, including Grace Tamagno, she clearly directs that the rents and profits should be paid them during the continuance of the trust. She makes no provision for the payment to any other person of the rents and profits, in case of the death of the residuary legatees, which leads me to believe that she intended to create a vested remainder in Grace Tamagno during the life of the trust. I have heretofore referred to the intention of the testatrix in disposing of her property.

Surrogate's Court, Greene County, December, 1923.    [Vol. 122

I agree with the attorney for the administrator where he states in his brief: "It is apparent that the gift of $3,000 to Grace Tamagno absolutely, to be paid by the trustees on the termination of the trust, creates an absolute gift of that amount to her. If the trust were now to terminate such gift would be payable to her estate and if this was the intention of the testatrix with regard to the gift from the estate in remainder, it was also her intention in respect to the share of the income given Grace Tamagno and directed to be paid to her during the continuance of the trust." The gift to Grace Tamagno as one of the residuary legatees of the rents and profits of the real estate was a vested right in the rents and profits during the lifetime of the trust. The rule that vested gifts are favored by courts is universally understood.

In *Cammann* v. *Bailey*, 210 N. Y. 19, the testator by his will, after making certain bequests, gave a part of his estate in trust to the trustees for the life of his wife and directed that a portion of the income should be paid to the wife, a portion to a son, and the residue of such income to other children. On the death of the wife the trustees were directed to pay to the children in equal shares the income until such children reached thirty years of age and as each reached that age the share of the principal was directed to be paid to him. One of the sons who was entitled to receive income died before the widow of the testator and before reaching thirty years of age. Two questions were certified to the Court of Appeals, (1) as to whether the son took a vested interest in the income and if so whether such interest passed under the son's will, and (2) as to whether the son took a vested interest in the share of the principal estate. Both questions were answered in the affirmative.

In *Morgan* v. *Williams*, 66 How. Pr. 139, it was held that upon the happening of the death of one of the beneficiaries to whom a share of the income was, by the terms of the will, made payable during the life of the trust as provided by the 10th clause of the will, the share of the person so dying should thereafter be paid to the legal representatives of the person so dying during the duration of the trust.

To the same effect is *Montanye* v. *Montanye*, 29 App. Div. 377.

The gift of income to Grace Tamagno during the continuance of the trust cannot be cut down except by language showing as clear an intention to do so as the prior part does to make an absolute gift of income for the period stated. *Matter of Hoffman*, 140 App. Div. 121.

The attorney for the residuary legatees relies upon the case of *People's Trust Co.* v. *Flynn*, 44 Misc. Rep. 6, and in considering

that case I will adopt the language in the brief of the attorney for the administrator, which clearly expresses my opinion in reference to the matter: " In examining the authorities on the question as to whether or not the gift of income to Grace Tamagno was vested and is payable during the continuance of the trust to her personal representative, it should be borne in mind that there are two separate and distinct lines of cases, one dealing exclusively with the class of cases in which the testator sought to make some provision for the disposition of the income in case of the death of one or more of the beneficiaries taking income, during the continuance of the trust, but failed to provide against the particular contingency which happened, and the other with the cases like the present one, where there is an absolute, outright gift of income for the full trust period. It can be seen that if the testator provides in his will that in case of the death of a beneficiary taking income, before the termination of the trust, that the income shall pass for the remainder of the trust period to someone else, although he may not succeed in anticipating the particular contingency which actually happens or give to some other beneficiary existing at the time of the death of the first one, yet he would clearly indicate his intention that the gift of income shall not vest for the full trust period, and in such cases the courts have very properly held that the gift of income was not vested. The case of *People's Trust Co.* v. *Flynn, supra,* is one of the cases where the testator by a provision directing that in case of the death of any of his five children before the termination of the trust, the income should thereafter be paid to the issue of such child, indicated clearly his intention that his children were not to take a vested interest in the income for the full trust period. One of the children died during the continuance of the trust without issue and the testator failed to provide against this contingency. Nevertheless by the provision mentioned he clearly indicated an intention not to vest the income for the trust period in his children, but rather for their lives." See, also, *Matter of Klumpf,* 95 Misc. Rep. 436.

In the case of *Young* v. *Barker,* 141 App. Div. 801, it is held that George Barker had a vested remainder in one-third of the income as tenant in common with his brother and sister, and hence his share thereof did not go to the survivors of them, and that the accumulations must be disposed of under section 63 of the Real Property Law. The court further say (p. 807): " We have seen that George Barker took a vested estate at the death of the testator, and that such estate was alienable and devisable. As he left a will, I think that such estate passed thereunder to his executrix, and that it is she who is entitled to the next eventual estate for the purposes declared by the testator."

Without citing any further authorities upon the question, I am of the opinion that the legatee, Grace Tamagno, had a vested interest in the rents and profits mentioned during the lifetime of the trust, and that she having died, such right or interest passes to her administrator during the life of the trust and such administrator is entitled to take said income as it shall become payable, by reason of the fact that he is acting as administrator of the estate of the person to whom the rents and profits were payable, during the continuance of the trust, or if she is presumptively entitled to the next eventual estate, as suggested in *Young* v. *Barker, supra,* such income is payable to the administrator of Grace Tamagno, deceased.

Decreed accordingly.