(63 App. Div. 321.)

## MYERS et al. v. McCULLAGH.

(Supreme Court, Appellate Division, Second Department.   July 25, 1901.)

EXECUTORS AND TRUSTEES—SUBSTITUTION OF TRUSTEES—WILLS.

A testatrix devised a life estate to her son, remainder to said son's children, and provided that the nominated trustees should have the power to sell any of the realty devised in trust when expedient, except that no part of the estate devised to her son for life should be sold during his lifetime without his consent. It was further stipulated that, if a sale was had before the time for the final disposal of the property, the trustees should invest the proceeds in certain bonds, and pay over the income to persons entitled, and on the termination of the life estate distribute the proceeds to the persons entitled to the fee. The will disposed of other property, the title of which was vested in the trustees. The trustees named in the will were both dead when the will took effect, and the court appointed trustees with authority to execute all the trusts and directions to the executors named in the will. *Held,* that the appointed trustees were vested with all the powers of the named trustees, and a sale by them of realty of the estate was valid.

Appeal from special term, Orange county.

Suit by John K. Myers and another, as trustees under the will of Mary Ellen Haight, deceased, against John McCullagh, to compel the specific performance of a contract for the purchase of realty belonging to the estate. From a decree in favor of the complainants, the defendant appealed. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Frank Moss and Samuel Marcus, for appellant.

M'Cready Sykes (William B. Hornblower, on the brief), for respondents.

WOODWARD, J.   Mary Ellen Haight died in the month of February, 1895, leaving a last will and testament, which was duly admitted to probate by the surrogate's court for the county of New York on or about the 18th day of April in the year of her death. It is conceded that Mrs. Haight died seised of the premises referred to as the "Home Farm," and known as "Knapknoll," having a title in fee simple and unincumbered, and the controversy now before us relates to this farm.   The will above mentioned, which was subsequently recorded in Orange county, consists of an original will and two codicils.   In the original will Mrs. Haight provided as follows:

"I give to my son Henry Jansen Haight all my real estate in the town of Goshen, Orange county, New York (except that part of the same known as the 'Heard Farm,' which was conveyed to my late husband by John Heard and wife by deed bearing date the thirtieth day of November, one thousand eight hundred and sixty-six, containing about one hundred and twenty-five acres, and also the brick farm house on said premises), for his life, and for the life of his present wife, if she survives him, or so long as she shall remain his widow, and upon his death, if he survive his said wife, or upon her death or marriage if she survive him, to his oldest son then living, or, if he leave no son, then to his oldest daughter then living, in fee."

Then follows a provision in which Mrs. Haight gave the excepted premises, "the said Heard farm and said farm house, to my son Edward Clarence Haight for his life, and upon his death to his

present wife, if she survive him, for her life, or so long as she remains his widow."

The premises devised to Henry Jansen Haight are involved in this litigation, and comprise the home farm. It is a country seat, largely incumbered with buildings of little practical value for farming purposes, and it will be observed that the will had the effect of suspending the power of alienation during the extreme limit allowed by the statute. It appears to have been the desire of the testatrix to keep her fortune intact during the lifetime of her sons and their wives, and to transmit the same to her grandchildren, at least in so far as this real estate is involved, but it seems to have occurred to her subsequently that it might not be desirable to retain the property in the form of real estate. At the same time she appears to have been reluctant to permit the title to vest in her own sons, though willing to give them some degree of control; for in the codicil to her will she provides for giving the same estates, with some modifications, which were indicated in the original will, and then adds:

"Having by my will given my trustees power to sell any of the real estate devised by them in trust, and to sell the Heard farm at Goshen, Orange county, as therein mentioned, I further authorize them to sell any other part or parts of my real estate whenever, in their judgment, it will be to the advantage of those interested therein so to do, or whenever a sale shall be necessary or expedient, in their judgment, to make a proper division among the persons who may be entitled thereto: provided, however, that no part of my estate devised to either of my sons for life shall be sold during the lifetime of the son to whom the same is so devised, except with his consent," etc.

It is further provided that:

"In case of a sale of any part or parts of my estate before the time shall arrive for a final division of the part or parts so sold, I authorize my said trustees to invest and keep invested the proceeds thereof, or so much thereof as shall then be necessary to carry out the provisions of my will relative thereto, in bonds secured by mortgage on unincumbered real estate, or in securities of the United States or of the state of New York, and to hold the same in trust to collect the income thereof, and to pay over the same to the person or persons who under my will are entitled to life estates in the part or parts sold; and, upon the termination of such life estates by death or otherwise, to pay over and distribute the proceeds to the person or persons who would thereupon become entitled to the possession of the same in fee simple, if the same had not been so sold."

The will and codicil nominated and appointed Stephen D. Hatch and Thomas L. Ogden as trustees and executors of the will, and provided a somewhat elaborate scheme for the filling of vacancies, which is not necessary to be here considered. Both Hatch and Ogden died before the testatrix, so that upon the will taking effect there were no executors or trustees in existence, and the question to be determined here is whether the trustees or agents of the court subsequently appointed had the power to convey a good and marketable title to the home farm.

The will and codicil were proved by the sons, Henry J. Haight and Edward C. Haight, who received letters testamentary with the will annexed, and on or about October 24, 1896, the said sons brought a proceeding in Westchester county, which was not con-

tested (all of the parties having any interest in the portion of the estate now under consideration having appeared and consented), under which they secured the appointment of the present plaintiffs as trustees of the will and codicil of Mrs. Haight, with power to execute all the trusts and powers in trust. The order entered in this proceeding, and which has never been reversed or questioned, "ordered and decreed that the said John K. Myers and Francis W. Nuboer, upon the execution and filing of said bonds, be, and they thereupon shall be, fully authorized and empowered to execute and administer all the trusts, powers in trust, and directions to the trustees thereof mentioned or referred to in said will and codicils of Mary Ellen Haight, deceased, and to do and perform all acts and things relating or appertaining thereto as fully, amply, and sufficiently in all respects as the said trustees, Thomas L. Ogden and Stephen D. Hatch, named in and by the said last will and testament and codicils, were authorized and empowered to do under and by virtue of said last will and codicils, and all the rights and title vested by said will and codicils in the trustees thereunder, and all the power, authority, control, directions, and discretion conferred upon the trustees thereunder, shall thereupon be vested in, and belong to, said John K. Myers and Francis W. Nuboer, as trustees as aforesaid." It is proper to state that the will of Mary Ellen Haight, in addition to the matters here involved, disposed of a large estate, a considerable portion of which was vested in the trustees, and the scheme of the will contemplated a general supervision of the affairs of the estate by the trustees named therein. When the court assumed the duty of providing the trustees to give effect to the trusts created by the will, it invested these trustees with all the powers, duties, and obligations which the will had imposed upon the trustees named in it. The case is presented in a different light, therefore, from what it would be if the only matters involved were those relating to the real estate now under consideration. Considered abstractly, it might be said, with much of plausibility, that the will, in devising a life estate to Henry J. Haight, with remainder over to his eldest son or daughter, had made a complete disposition of the property, and that the power of sale was a mere naked power, delegated to particular individuals, and not properly to be exercised by any one else; but when considered in the light of the will and its codicils, and in view of the fact that trustees were absolutely necessary to carry out the provisions of the will, it can hardly be questioned, from a practical standpoint, that it was proper, in providing the trustees for the express and active trusts, to invest them with all of the powers, duties, and discretions imposed upon the trustees named in the will, including the power of sale. The intent of the testatrix to provide for the sale of the property, with the consent of the persons holding life estates, is as clear and distinct as any other provision of the will in reference to the trusts created, and, if it was proper to appoint trustees at all, it is not clear why there should be any different rule adopted in reference to the power of sale than in respect to the other duties of such trustees. In other words, the intent of the testatrix being per-

fectly lawful, there is no more reason why one provision of the will governing the conduct of trustees should be defeated than another, and the fact that Mrs. Haight restricted this power of sale, by providing that the consent of the holders of the life estates should be secured, is evidence of the fact that she did not rely wholly upon the personal judgment or discretion of the persons nominated as trustees in her will. The trustees named by the court could not act without the consent of the holders of the life estates, any more than the trustees originally named could, and the whole purpose and intent of the testatrix may be carried out with perfect safety to all persons interested, through the action of substituted trustees, acting under the provisions of the will. If we are right in these premises, it follows that the decree appointing the substituted trustees is an adjudication upon the question here involved, and is a complete protection to any one taking title through them.

This position is further strengthened by the subsequent order of the court, issued on the 2d day of February, 1901, upon notice to all of the parties living who have an interest in the matter, in which it is "ordered and determined by the court that it is to the best interests of the estate, and necessary and for the benefit of the estate, that the real property described in the petition should be sold, and that the trustees aforesaid are hereby instructed and directed to sell the same on the consideration referred to in the petition, on such terms as they may be advised; and they are hereby authorized and directed to negotiate, to contract for the sale, and to sell and convey, on behalf of the court, the premises therein referred to, and to make such arrangement in regard to the payment of the purchaser's expenses as they may be advised; and they are authorized to take all steps and proceedings that shall be necessary to accomplish the sale, and to give a proper deed or deeds for the property aforesaid."

When we remember that under the will the proceeds of this sale are to be invested and kept invested in certain high-grade bonds, to be held by the trustees, "to collect the income thereof, and to pay over the same to the person or persons who under my will are entitled to the life estates in the part or parts so sold, and upon the termination of such life estates, by death or otherwise, to pay over and distribute the proceeds to the person or persons who would thereupon become entitled to the possession of the same in fee simple, if the same had not been sold," it must be apparent that, should others be born who would be entitled to take under the will, they would have no cause to complain. It is equally certain that no court will undertake to set aside the action of trustees acting under the orders and in behalf of the supreme court of the state of New York, where all of the living parties in interest have had notice of all of the proceedings, and have consented thereto; for where an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand, not only

for themselves, but also for the persons unborn. This is a rule of convenience, and almost of necessity. The rights of persons unborn are sufficiently cared for if, when the estate shall be sold under a regular and valid judgment, its proceeds take its place, and are secured in some way for such persons. Kent v. Church of St. Michael, 136 N. Y. 10, 17, 32 N. E. 704, 18 L. R. A. 331, 32 Am. St. Rep. 693, and authorities cited; Kirk v. Kirk, 137 N. Y. 510, 516, 33 N. E. 552. See, also, Ebling v. Dreyer, 149 N. Y. 460, 44 N. E. 155.

Here the fund is held in lieu of the real estate, and is to be disposed of at the close of the life estates in exactly the same manner as though it had remained real property, so that all of the rights of unborn persons are fully provided for; and whether the court should have appointed its own agent to execute the power in trust, under the provisions of section 141 of the real property law, instead of substituting trustees, is not very material. The supreme court has inherent power to execute a trust, and in the absence of a trustee it may, and will, take upon itself its execution (Kirk v. Kirk, 137 N. Y. 515, 33 N. E. 552, and authorities there cited); and whether this is accomplished through the medium of substituted trustees or an agent of the court is not, in so far as the defendant here is concerned, very material.

In the case at bar the testatrix provided a scheme for the distribution of her property, involving the intervention of trustees. The trustees named in her will were both dead at the time the will became operative, and the court, upon the application and consent of all of the living parties in interest, has decreed that the present plaintiffs should accept the duties, obligations, and responsibilities of trustees, and that they should be vested with all of the powers which would have belonged to the trustees named in the will, thus carrying out the plain intent of the testatrix, and, so long as the decrees of the court stand unchallenged and unreversed, the defendant cannot be heard to claim that they cannot give him a good title to the premises in dispute. The power of sale given to the trustees by the will and codicil is, in contemplation of law, a power coupled with a trust. It is essentially interwoven in the scheme of the will, which is to be read and construed as a whole, and the courts will protect any one holding title through the substituted trustees. This action was brought to compel the defendant to perform his contract, and to adopt the deed tendered by the plaintiffs, the substituted trustees. The trial at special term resulted in a judgment in favor of the plaintiffs and against the defendant, and we have reached the conclusion that the judgment should be affirmed.

The judgment appealed from should be affirmed, with costs. All concur.