In the Matter of the Petition of FREDERICK F. WHITE to Render and Settle His Accounts as Sole Surviving Executor and Trustee of SARAH E. WHITE, Deceased, and for the Appointment of a Substituted Trustee or Trustees in the Place of THOMAS H. TROY, Deceased; and of EMILY F. TROY, as Executrix, etc., of the Will of THOMAS H. TROY, Deceased, to Settle the Accounts of Said THOMAS H. TROY, as Executor and Trustee of Said SARAH E. WHITE Down to the Date of His Death; and for a Construction of the Will of Said SARAH E. WHITE.

Surrogate's Court, Kings County, December 9, 1929.

*Gray & Tomlin,* for the petitioners.

*John J. Fitzgerald,* special guardian.

WINGATE, S. The question involved in this proceeding concerns the powers which may be exercised by a successor trustee of certain trusts erected by the will of Sarah E. White, which was admitted to probate in this court on April 4, 1905.

By the first seven items of her will, testatrix gave eight legacies aggregating $37,500, of which sum $22,500 was to be paid forthwith,

and $15,000 conditioned on the respective beneficiaries surviving testatrix's son, Frederick F. White. She then erected a trust of $6,000 for her sister, Carry A. Cole, and a trust of the remainder of her estate for the benefit of her son, Frederick F. White, " during the life of his present wife Mary C. White," directing that if he survived her, the corpus should be paid to him outright. Further trusts of $30,000 and $45,000, respectively, were erected for Mary C. White and testatrix's granddaughter, Lelia K. White, in case they survived the son, with remainders payable outright to such granddaughter. Any otherwise undisposed of portions of the estate were given to three named brothers and one named sister of testatrix. The executors appointed were James Troy, Thomas H. Troy, and the son, Frederick F. White.

The will contained the following additional provision for the benefit of testatrix's son: " I further authorize and empower my said Executors other than the said Frederick F. White in the exercise of their Judgment and discretion, if they deem it for his benefit or advantage, to pay and advance to him from time to time out of the principal of my estate such sum or sums of money as he may require, and as they deem proper as aforesaid hereby giving and granting unto my said Executors other than the said Frederick F. White full and unlimited power and authority in this respect, it being expressly provided however that the power and authority hereby given to advance to my said son out of the principal of my estate is not so given or intended to be given to, or to be exercised by him as one of my Executors or otherwise, but is intended to be given, conferred upon and exercised by the other Executors only exclusive of the said Frederick F. White."

James Troy, one of the named executors, died in 1917, and Thomas H. Troy, the second, died on December 14, 1928.

This proceeding has been instituted for the judicial settlement of the accounts of the executors and trustees and for the appointment of a successor trustee, in connection with which a construction is prayed as to the right of a successor trustee to exercise the discretionary powers above noted.

The accounts show that the present value of principal is $171,922.83. During the period of thirteen and a half years covered by the submitted account, the income payment to F. F. White, the life tenant, has averaged $7,682.08 a year and in this time it appears that the trustees in the exercise of their discretionary powers have made payments of principal on three occasions, viz., in 1916, $1,200; in 1922, $1,750; and in 1926, $600.

The rules of law in this State respecting the occasions when substituted or successor trustees are deemed to be vested with

discretionary powers granted to those first named in the instrument erecting the trust are apparently the subject of considerable confusion in the minds of a large part of the legal profession.

The opinion seems to be prevalent that on this branch of the subject of testamentary construction, a rule of thumb exists, by the aid of which all problems of this nature may be solved out of hand without reference to the otherwise universal limner of construction, that the intention of the testator must prevail so far as it is ascertainable from the four corners of the will. It is believed that the authoritative determinations involving the question demonstrate that such is not the case; and that on this branch of the subject of construction of wills, as elsewhere, the determining factor is the intention of the testator as disclosed by the words used in the document construed.

Perhaps the leading case on this subject is *Smith* v. *Floyd*, which was first heard at Special Term in 1907 (56 Misc. 196). By the terms of the will in that case, testatrix bequeathed her entire estate to trustees to apply the income for the use, maintenance and support of her only daughter, gave such daughter a power of appointment as to principal, made alternate gifts contingent on her failure to exercise the power, and gave her trustees authority " to apply such portion of the capital of the trust funds as they may deem advisable to the use " of the daughter. One of the trustees died, and the other resigned, whereupon the question was presented as to whether a substituted trustee should be held vested with a similar discretion. It appeared that the estate consisted of $20,000 personalty, which yielded the daughter an income of $76 a month, and of $30,000 realty, which was entirely unproductive; that she had no other income and that the sum which she received was entirely inadequate for her support. The court at Special Term reluctantly concluded that the discretionary power did not pass to the substituted trustee. This was affirmed in the Appellate Division by a three to two decision (124 App. Div. 277), Judge INGRAHAM writing a strong dissenting opinion. On appeal to the Court of Appeals, the decision was unanimously reversed on the opinion of Judge INGRAHAM (193 N. Y. 683). This opinion being thus adopted by the Court of Appeals becomes the controlling statement of the law of the State. The learned judge in this opinion notes the *ratio decidendi* of the court below that " ' whenever power is of a kind that indicates a personal confidence it must *prima facie* be understood to be confined to the individual to whom it is given, and it will not, except by express words, pass to others, to whom by legal transmission the same character may happen to belong.' " He then writes as follows (p. 282): " With this principle we are

not at all inclined to disagree; but in considering whether it is applicable to this case, it must depend on whether it was the intention of the testatrix that the exercise of this power should be limited to the trustees that she named, for, after all, this question, like all others that relate to the construction of a will, is to be determined by the intention of the testator."

The opinion then notes the smallness of the estate, the intention of testatrix to devote it in its entirety to the daughter with absolute power of appointment, and continues (at p. 283): " It was not a case where a discretion was vested in the trustees in relation to the management of her estate, which she desired to intrust to the skill of the trustees, and which it was not reasonable to suppose she would intend to submit to the discretion of a substituted trustee with whose selection she could have no influence, but a provision for the benefit of a beneficiary in whom the testatrix was interested and for whose benefit she appropriated her whole estate."

The final pertinent principle is stated at page 284: " In determining whether or not a testatrix intended that a discretion with which her trustees were vested was one that must be exercised by the trustee named, and was not intended to be exercised by a substituted trustee, attention, I think, should be given to the nature and extent of the power and the period during which it was contemplated that it would be necessary to exercise the power. It seems to me quite evident that the creator of the trust could not have intended to limit the exercise of the power to the continuance in office of the trustees originally appointed, as such a construction would defeat the express intention of the creator of the trust."

It being clear, therefore, that the ultimate criterion of determination in this connection is the intention of the testator as disclosed by the words used, when applied to his circumstances as found to exist, it follows that on this branch of the subject of construction as on others, decided cases are of slight aid in reaching a result since, as has been aptly said, " no will has a twin brother," and the facts in each case differ materially from those presented in every other. (*Matter of Durand*, 250 N. Y. 45, 53; *Matter of Bump*, 234 id. 60, 63; *Matter of Storey*, 134 Misc. 791, 795; *Matter of Quinby*, Id. 296, 301.)

Whereas, therefore, some cases have held that a discretion to trustees passed to successors and others have held it did not, it is believed that all determinations of the courts of the State are substantially reconcilable on the theory stated. With this end in view, some of the outstanding decisions will be reviewed.

In *Rogers* v. *Rogers* (111 N. Y. 228) testator erected a trust from the residue of his estate, directing that so much of its income be

used " as may be necessary for the comfortable support " of his wife, children and mother. In case the income proved insufficient he authorized his executors to employ so much of the principal as might be necessary to make up the deficiency. The remainder was bequeathed to the children. The widow was the only one of the five executors named who qualified. By order of the Special Term she mortgaged the property, using the proceeds for the support of the beneficiaries. This course was here upheld, the court saying (p. 238) that it was clear that the court might have appointed a new trustee to exercise the discretion, and that *a fortiori* it could exercise such discretion itself, which it had here done.

In *Haynes* v. *Sherman* (117 N. Y. 433) testator left his property in trust to his wife " to * * * use so much of the income and principal as she may deem necessary for her support and the support of our children * * *," with remainder to testator's heirs. The court said (at p. 438): " The trust was not so far personal that it would disappear with the death of the widow. The discretion vested in her was not a personal discretion, but one to be exercised by her as trustee, which could, therefore, be devolved upon her successor to be appointed by the court."

*Lahey* v. *Kortright* (132 N. Y. 450) presented the question of the right of a substituted trustee to exercise a discretionary power of sale. The court says (at p. 456): " While a mere power of sale is discretionary and does not survive the donee of the power, it is otherwise when the power is coupled with a trust. Then it is taken by the trustees, and through the court of equity may be transmitted to their successors in the trust." The same result was reached in *Myers* v. *McCullagh* (63 App. Div. 321); *Burtis* v. *Trowbridge* (142 id. 449). (See, also, *Sweet* v. *Schliemann*, 95 App. Div. 266.)

In *Benedict* v. *Dunning* (110 App. Div. 303) the will gave property to a trustee to pay the income " or such part * * * thereof as he shall in the exercise of his said discretion and judgment deem suitable or necessary " to testator's son. The succeeding item of the will read in part as follows: " * * * I authorize, but do not direct, my said executor, if in the exercise of his said discretion and judgment he shall see fit so to do, to pay over * * * any part of * * * the principal sum * * *; it being my intention and will to invest *my executor hereinafter named* with the absolute right and power of deciding whether, and at what time, if ever, any part * * * of the principal * * * herein given my executor shall * * * come into the possession * * * of my said son." The court held that the discretion respecting

payment over was a personal one in the executor named and that the testamentary scheme was so closely interwoven as to make it apparent that testator intended a like personal discretion respecting income; consequently, the trust terminated upon the death of the trustee named. The court says (at p. 306): "Whether the power in trust is confided to an individual is a question of intention to be ascertained from the terms of the trust instrument. Where the instrument provides that the trustees are to act upon their determination of an ascertainable fact, the trust is not personal, but where their actions rest entirely upon their personal discretion, no one can be substituted for them."

It is believed that the result in this decision is probably correct in view of the words of the will which have been italicized. The last clause of the portion of the opinion quoted seems, however, rather too broad in view of the subsequent determination of the Court of Appeals in *Smith* v. *Floyd* (*supra*). It is interesting to note that Judge INGRAHAM, whose opinion prevailed in the *Smith* case, here dissented.

In *Jones* v. *Dodge* (69 Misc. 126; affd., *sub nom. Jones* v. *Bevillard*, 145 App. Div. 906; affd., 209 N. Y. 446) testator erected trusts for his wife and children with remainder to his grandchildren authorizing payments of principal "in case of any contingency," whenever any two of his three trustees should "deem it advisable" to do so. All three trustees qualified, but by reason of death or resignation, all ceased to act and a successor was appointed. The court construed the will as showing a dominant purpose to conserve the estate for the grandchildren, and the discretion to invade the principal as intended to be personal and to be executed only by two of the individuals named, and, therefore, not within the power of the substituted trustee.

*Matter of Donlin* (177 App. Div. 184) is of especial interest as exhibiting the liberalized attitude of the Appellate Division for the First Department, following its reversal by the Court of Appeals in *Smith* v. *Floyd* (*supra*). Here the will gave life estates to testator's widow and children with remainders to their issue; the trustees were then given "the right and power in case they shall deem such action justified or deserved by the conduct and course of life of the life beneficiary of such share, and that it will for other reasons seem to them proper to do so, to pay to the son who shall be such life beneficiary out of the principal of the share set apart as representing him, from time to time, such sum or sums of money as to them shall appear to be reasonable and to be productive of benefit to him, or to apply the same in such manner as they may think most likely to so benefit him." The court held that it was the

primary intention of the testator to provide for his children and that (p. 189) "the reasonable construction of these provisions is that he intended to clothe the trustees with authority to provide *liberally* not only for the necessities, but also for the general welfare and comfort of the beneficiaries. \* \* \* Thus construed as creating a trust for the support and comfortable maintenance of the testator's two sons, there is no reason why this authority should not devolve upon a substituted trustee as well as upon the trustees named by the testator, and otherwise his purpose \* \* \* would be defeated."

*Matter of Jenkins* (111 Misc. 517) sheds additional light on the tests for determining testator's intention in this direction. In the will there construed, testatrix granted discretionary powers of investment to her trustees, one of which was a trust company. All the trustees having ceased to act and a substituted corporate trustee having been appointed, the court held that it was vested with like discretion, saying (at p. 520): "\* \* \* by designating a trust company to act in case of the renunciation or removal of the two individuals, I think she showed that the powers in question were not of a particularly personal nature, because she could not be certain of the individuality of the trust company officers, who at some future time might be charged with the duty of exercising the discretionary power." The principles enunciated in this decision were substantially followed in *Matter of Trowbridge* (117 Misc. 55, 61). (See, also, *Matter of Jones*, 119 Misc. 519, 520.)

There remains for examination in this connection only the decision of the Court of Appeals in *Hull* v. *Hull* (24 N. Y. 647). In that case two questions of discretion were presented. The executors were granted the power, *first*, to increase an annuity to a son from $500 to $1,000; and *second*, to pay over the principal absolutely when he attained the age of thirty, if he was at that time, in their opinion, solvent. The court says (at p. 651): " It may be conceded that when a matter or thing is to be determined or decided entirely by the personal discretion of one or more parties and they die or refuse to exercise this discretion, there is no way any determination or decision can be made. That provision of the present will which confides to the discretion of the executors an increase of the annual allowance to the son is of this description. But where a direction in a will is, that the executors or trustees are to do or to determine upon any particular thing, and a rule is given, based upon facts readily ascertainable in the usual manner of legal determination of facts, then it is not a case of pure personal discretion, and the courts will uphold the will, and order the facts, if disputed, to be determined in the usual way."

The principles of law deducible from these decisions are as follows:

1. The question of whether successor trustees succeed to discretionary powers granted to trustees named in the will, depends on the intention of the testator as expressed in the will as a whole, construed in the light to the surrounding circumstances.

2. Pertinent circumstances which have been considered as indicating an intent on the part of testator that such power is to continue, are

(a) Where the discretion is based upon facts which may be determined in the ordinary course of judicial inquiry;

(b) Where a contrary determination would result in a defeat of the entire testamentary plan;

(c) Where the discretion relates merely to a power to sell trust property;

(d) Where one of the original trustees named was a trust company;

(e) Where the discretion, if exercised, would be for the benefit of the primary objects of testator's bounty;

(f) Where it is clear that testator must have realized that the emergency calling for the exercise of the discretion, might, in the natural course of events, arise at a time when none of the trustees originally named were in office.

(3) The presence or absence of one or more of these circumstances is not decisive of the question, and if it be determined from a construction of the will as a whole that the testator intended a discretionary power to be personal to the trustees originally named, his wishes will be given controlling effect.

Applying the principles of law thus reviewed to the facts here present, we find that the originally distributable estate aggregated approximately $195,000. Of this all except $28,500 was presently dedicated to the benefit of the son. During the life of his wife and daughter this was to be in trust, but it was further provided that if he survived them, he was to receive the principal outright. Only when the fund was no longer necessary for his use was any one else to share in it. Obviously during his life the benefit of the fund was also indirectly dedicated to the support and maintenance of his wife and daughter and on his death, if they survived him, a substantial portion — $75,000 — was directed to them. It is difficult to imagine any case in which a primary purpose of a testator could be more manifest than here, to dedicate an estate to a son and his family. The discretionary power to invade principal is merely additional evidence of this main testamentary aim. Adopting as the meaning of the word " require," used in this will, the

definition given in the Standard Dictionary, " To have imperative need of," it is reasonably apparent that, as in the will under construction in *Matter of Donlin (supra)*, testatrix here intended to create " a trust for the support and comfortable maintenance " of her son, and " there is no reason why this authority should not devolve upon a substituted trustee as well as upon the trustees named by the testator, and otherwise his purpose  *  *  *  would be defeated."

While it is determined that the discretion to invade principal for the needs of the son passes to the substituted trustee, the rules govering such discretion, as stated in *Matter of Wilkin* (183 N. Y. 104), should be carefully observed by him. The court there says, in an analogous case (at p. 113): " The discretion of the trustee was not absolute, but it was a sound discretion, to be exercised according to her best judgment and in the best of faith, which is always true of such authority, unless stated in terms to be otherwise."

Since no objections have been interposed to the accounts as submitted, they are approved.

James M. Gray is appointed substituted trustee and upon his due qualification, letters of trusteeship may issue to him.

Submit decree, on notice, accordingly.