In the Matter of the Estate of JOHN KUNTZ, Deceased.
Surrogate's Court, Kings County, October 27, 1936.

*Cullen & Dykman,* for the petitioner, Brooklyn Trust Company, as substituted trustee of a trust created for Frederick Kuntz.

*Benjamin H. Trask,* for the respondent Frederick Kuntz, as beneficiary of the said trust fund.

*Joseph Rosenblatt,* for Katherine K. Vuolo, as one of the remaindermen.

*Paul L. Gravenhorst,* special guardian for the infant remaindermen.

WINGATE, S. It is elementary that in attempting to ascertain the intent of a decedent in the disposition of his estate made in his will, it is the duty of the court, as far as possible, to place itself in the position occupied by the testator at the moment of the execution of the questioned document, and to view the situation as at that time presented to him. This is epitomized in the metaphorical aphorism of Lord Justice WILLIAM MILBOURNE JONES in *Boyes* v. *Cook* (L. R. [1880] 14 Ch. Div. 53, 55): " You may place yourself, so to speak, in his arm-chair, and consider the circumstances by which he was surrounded when he made his will."

Adopting the attitude enjoined, it appears that on January 26, 1901, the testator was married and had three adult married children, namely, a daughter and two sons. His relations with and feelings regarding these children are demonstrated in the ninth item of the will, in which he writes: " The reasons why I discriminate in this Will in favor of my daughter and against my sons, are that my sons have already received from me various sums of money for their education and to start them in business, which my daughter has not; and she has always been obedient and dutiful, whereas both my sons have caused me much grief and trouble."

The discrimination to which he thus referred was one of possession rather than of beneficial enjoyment, since he dedicated to the use of his wife and three children precisely those shares of his residuary estate (which included his entire property other than the family residence and general legacies of $850), which would have been theirs had he died intestate. To the wife he gave one-third outright. The shares of the children were of two-ninths each. Here, however, the discrimination emerges, since the daughter received her share outright, whereas those of the sons were placed in trust, with restricted use of the income for their respective benefits and those of their children.

Apparently the testator entertained diverse feelings and hopes respecting his two sons, since the terms of the trust for John precluded the possibility that any portion of the principal might ever reach his hands, whereas that for Frederick read in part: " If at

any time my said son Frederick shall reform (which God grant) and give satisfactory proof to my executors that it would be safe and proper for him to receive money for the purpose of conducting business on his own account, I hereby authorize my executors to start him in business, and to give him out of the two-ninths parts of my residuary estate held by said Executors under this subdivision of my Will, for the purpose of conducting such business, not exceeding one-third of such two-ninths parts."

It is represented in this proceeding that Frederick has now completely reformed; that he is not addicted to drink; and that he has for fifteen years been successfully engaged in business. On this showing, he seeks to induce the substituted trustee of this trust to pay over to him one-third of the principal fund for use in his business. The remaindermen earnestly contest the authority of the trustee in this regard and the latter submits the question for the determination of the court.

The main grounds of contest of such authority are, *first*, that the discretion was peculiarly reposed in the original trustees and did not pass to their successor; and, *second*, that in any event, the discretionary power was merely to " start him in business," wherefore, it is asserted, since he is already in business, this act is impossible of accomplishment, and the discretionary authority, if existent, is incapable of exercise according to its terms.

In *Matter of White* (135 Misc. 377) this court had occasion to review a considerable number of the authorities pertinent to a decision of whether, in a given case, a discretionary authority should be deemed to devolve upon a successor fiduciary, reaching the conclusion, *inter alia* (p. 384), that an extremely pertinent consideration in attaining a determination that such authority survived in a successor was " where it is clear that testator must have realized that the emergency calling for the exercise of the discretion, might, in the natural course of events, arise at a time when none of the trustees originally named were in office."

It is wholly obvious that such a condition is here present. The testator's own statement respecting his reasons for dealing with his sons on a basis differing from that with which he dealt with his daughter is not a matter of conjecture. He has himself enlightened us. It was solely due to the conduct and demonstrated habits of the sons. He obviously entertained hopes that Frederick would reform, while apparently he was not equally optimistic respecting John. Such reformation, if it should take place, might come in a year or a decade or even in a quarter century, but if it came, it was his obvious desire that the invidious discrimination made against him should, at least partially, come to an end, and this

wish would not be altered by reason of the wholly immaterial consideration as to the identity of the trustees at the moment. The court accordingly rejects the contention of the remaindermen that the substituted trustee is not vested with a discretion in this regard, wholly equivalent to that possessed by the original nominees.

The second contention noted is narrow and legalistic to a degree, when viewed in the light of the obvious attitude of the testator toward his sons. The sole reason for his discrimination against them in respect to principal was due to their previous actions and habits, and it was his most earnest prayer " (which God grant) " that this cause be removed thereby enabling Frederick to be placed more nearly on a parity with his daughter. The answer of this earnest prayer would result in Frederick's becoming entitled to the possession of his principal to the extent noted. If a legalistic reply to a similar contention is required, it may be found by observing that the discretionary authority is two-fold, namely, not only " to start him in business " but also " to give him out of the two-ninths * * * held * * * under this subdivision * * * *for the purpose of conducting such business* * * * one-third of such two-ninths parts." (Italics not in original.)

The contention of the remaindermen that the testator's main interest was in them is refuted by the entire tenor of the will. The wife and daughter were given their shares outright without reference to any descendants and the only reason the sons were not similarly treated was because they were at the moment deemed untrustworthy. Any benefit to the remaindermen was wholly subordinate to the testator's interest in his immediate family.

Whereas, however, the testator obviously desired to have Frederick receive a portion of the principal if his reformation were demonstrated, the extent of such payment was expressly and explicitly limited by him to " one-third of such two-ninths parts." Perhaps he was fearful that reformation, if shown, might not be permanent. Perhaps some other consideration motivated this direction. The reason is immaterial in the face of the positive inhibition against further payment. It follows in any event that the discretion of the trustees extends no further than to a payment of one-third of the principal of the trust as originally constituted without any like power in respect to any accretion thereto from the trust for John.

The final submitted question relates to Frederick's right to income succeeding the death of his wife. The pertinent direction in this regard reads that it " shall be applied by such executors in their discretion, in such ways as they may deem best, toward the support of my son, Frederick Kuntz and his wife and the support and education of his children, during the natural life of my said son

Frederick." The wife has died. The children are adults. The trust term has not yet ended. The discretion must be deemed to continue for reasons identical with those hereinbefore considered in respect to the principal. If the discretion continues, Frederick is obviously not entitled as an absolute matter to receive the entire income. If the discretion continues, and the trustees for any sound reason deem it unwise to pay all of the income to Frederick, it must be payable, as to any excess, to the children, since accumulation is not permissible. (Real Prop. Law, § 61; *Matter of Shupack*, 158 Misc. 873, 876, and authorities cited.) The purpose of the payment, as stated in the will, was not only for their education but also for their support. Since they have reached adulthood, their education in the restricted sense of the term may be completed. They, like all other human beings, will require " support " so long as they live. Under the terms of the will, the trustee possesses a discretionary power to utilize income for this purpose. This authority extends only to the children of Frederick; not to his grandchildren.

The final question propounded in the brief of the trustee asks, in effect, whether the demonstration made by Frederick is adequate upon which to base discretionary action in his favor. This question will not be answered. The testator reposed the discretionary power in his fiduciaries and not in the court. To entitle Frederick to its favorable exercise it was stipulated that he should " give satisfactory proof to my executors." Proof which might be " satisfactory " to them might not be " satisfactory " to the court were it in their position, and *vice versa*. On the demonstration made by the affidavits submitted, the court is unable to state as a matter of law that an exercise or failure to exercise the vested discretion would be so unreasonable as to amount to an abuse thereof.

Proceed in conformity herewith.