(141 App. Div. 801.)

## YOUNG et al. v. BARKER et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. TRUSTS (§ 162*)—TESTAMENTARY TRUSTS—TERMINATION OF RELATION.
   The Supreme Court may accept the resignation of testamentary trustees upon such terms as the beneficiary's interest requires.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 212, 213; Dec. Dig. § 162.*]

2. TRUSTS (§ 319*)—COMPENSATION OF TRUSTEE.
   A testamentary trustee who voluntarily resigns his trust should not as a rule be allowed commissions on the capital of the trust property upon allowing his final accounts, and transferring the trust property to the new trustee.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 462; Dec. Dig. § 319.*]

3. WILLS (§ 627*)—ESTATES CONVEYED—TENANCY IN COMMON.
   A will devised the residue in trust to invest and to apply and divide the net income therefrom among testator's nephews G. and C. and his niece "equally, share and share alike, during the life of testator's daughter," but provided that, should the daughter recover from her affliction and marry and have lawful issue, from the birth of such issue the whole of such income should be applied to the support of the daughter and such issue, and, upon her death leaving lawful issue, a certain sum should go to testator's sister's living children, and the residue to such lawful issue, and, in case of the daughter's death without issue, the will devised one-third of the residue to nephew G. "his heirs, executors, administrators and assigns, forever." Held, that G. took one-third of the income during his life as tenant in common with his brother and sister, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hence his share of the income did not go to the survivors of them upon his death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1452–1459; Dec. Dig. § 627.*]

4. WILLS (§ 854*)—ACCUMULATIONS—DEATH OF PERSON ENTITLED TO TAKE—"EVENTUAL ESTATE."

Under 1 Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, art. 1, § 40 (Real Property Law [Consol. Laws, c. 50] § 63), providing that when, in consequence of a valid limitation of an expected estate, there is a suspension of alienation or ownership during the continuance of which the rents and profits are undisposed of and there is no valid direction for their accumulation, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate, the one-third of the rents and profits of the trust estate accumulating from both realty and personalty after the death of nephew G., during the life of testator's daughter, and which would have belonged to G., would pass to his executor under his will, G. taking the "eventual estate," by which is meant the estate which is to take effect upon the happening of the event which terminates the accumulation, and the fact that the remainder estate given to the nephew might be defeated by the marriage of testator's daughter leaving lawful issue would not affect the disposition of the accumulated income.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2170; Dec. Dig. § 854.*

For other definitions, see Words and Phrases, vol. 3, p. 2514.]

5. TRUSTS (§ 231*)—RIGHTS OF TRUSTEES.

Trustees are not entitled to any personal benefit at the expense of their beneficiary.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 330–335; Dec. Dig. § 231.*]

6. EXECUTORS AND ADMINISTRATORS (§ 494*)—ACCOUNTING—COMPENSATION FOR SERVICES—ATTORNEY FOR ESTATE.

An executor will not be allowed compensation for services rendered as an attorney in connection with the business of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2086; Dec. Dig. § 494.*]

7. TRUSTS (§ 231*)—INDIVIDUAL TRANSACTIONS.

In analogy to the rule that, in absence of express agreement to the contrary, the expenses incident to a loan on a mortgage for searching the records and for preparing the instruments are chargeable to the mortgagor, the trustee of an estate consisting of mortgages who was also an attorney was not required as a part of his trust duties to prepare the instrument and make searches in extending the mortgages for the mortgagor, so that his account as trustee should not be charged with money received for such services.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 330–335; Dec. Dig. § 231.*]

8. TRUSTS (§ 231*)—INDIVIDUAL TRANSACTIONS.

Money paid by a borrower to a trustee for procuring a loan from the trust estate will not be considered as profits to be charged to the trust estate, so as to charge the trustee therefor upon his accounting.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 330–335; Dec. Dig. § 231.*]

9. TRUSTS (§ 325*)—ACCOUNTING—PROCEEDINGS — BURDEN OF PROOF — VALUE OF SECURITIES.

In the absence of contrary evidence or of an objection upon an accounting by a testamentary trustee that the trust funds were not well invested, the trustee was not bound in the first instance to offer specific

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

evidence as to the value of the securities in which the trust funds were invested in order to authorize a finding that the funds were well invested.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 483–485; Dec. Dig. § 325.*]

Appeal from Special Term.

Action by Charles H. Young and another, as substituted trustees, against Edith M. Barker, individually and as executrix, Mary E. Leavitt and others, for the settlement of the account of testamentary trustees, etc. From parts of the judgment, the last-named defendant and two other defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and CARR, JJ.

George D. Beattys (Tarrant Putnam, on the brief), for appellant Mary E. Leavitt.

Carroll Berry, for appellant committee of Catharine B. Bell.

William L. Marshall, for appellant Jacob Berry.

Henry Bacon, for respondent trustees.

George P. Breckenridge (Rollin M. Morgan, on the brief), for respondent Edith M. Barker-Ransom.

JENKS, J. This action is brought by testamentary trustees for settlement of their accounts and for the construction of a clause of the will. After the trial of the action was begun, a referee was appointed to examine the accounts and to report the testimony, with his opinion, to the court. The referee reported, and the action was brought on for a final hearing, whereupon the court made an order confirming the report, and made findings and a decision for final judgment. Some exceptions were taken to the report and some to the findings and decision of the court. Three of the defendants appeal from portions of the judgment.

1. The defendant Berry appeals from that part of the judgment that determines that no compensation should be allowed to him as trustee under the will. He was not made an original party, but applied when the action came on for trial to intervene, and upon permission granted he answered. The will was admitted to probate in 1881. Berry, an executor named in the will, qualified and acted. He was discharged in 1891 and thereupon qualified as trustee, and acted until January, 1905. In the present action the executrix of George A. Barker, a former trustee with Berry, filed an account. Berry gave notice to the referee that he joined in that account and adopted it so far as it set forth his performance from February 1, 1903, to February 1, 1905, the period intervening the last account filed by him until his resignation as trustee. And he gave notice that he made claim to commissions for receiving the principal of the estate and for paying over the same pursuant to section 2730 of the Code of Civil Procedure. It appears that in 1904 an action was begun by Charles B. Barker against Berry and George A. Barker and others to remove the trustees for negligence, incompetency, mismanagement, and appropriation of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

funds. Issue was joined, and at the trial Berry resigned as trustee. Judgment was entered, wherein it was declared that the resignation was accepted, that Berry upon his resignation was removed and discharged, and was required to account to the present trustees, and to transfer the accounts to them. It does not appear that he was allowed any commissions or costs, or that when he presented his resignation, or at any time thereafter until the present, he had made claim for commissions. He had theretofore received his commissions as executor. It further appears that Berry was adjudged a bankrupt in 1904, and that his schedule of assets did not contain a statement of any commissions due or to become due. The referee reported that in his opinion Berry had no legal claim for commissions, and that his claim should be disallowed. Irrespective of the action brought against Berry, it appears that he resigned his trust. He was free to contest that action, and I shall regard the resignation in the light most favorable to him, as voluntary. The Supreme Court could accept that resignation upon such terms as the interests of the cestui que trust might require. Compensation could not be insisted upon as of course, inasmuch as Berry left the trust voluntarily for execution by another. Matter of Petition of Allen, 96 N. Y. 327. In the Matter of Jones, Trustee, 4 Sandf. Ch. 615, when it appeared there was no cause for the resignation other than the trustee's wish, the court determined that, having once undertaken those duties, he ought not now to decline them, so as to subject the trust estate to any loss or expense, and that, therefore, the order should provide that he be allowed no commission on the capital of the trust property upon passing his accounts and transferring of the trust property to the new trustee. This rule received the approval of this court in Matter of Allen, 29 Hun, 7, which was affirmed, ut supra, 96 N. Y. 327. And in Matter of Baker, 35 Hun, 272, Haight, J., writing for the court, notices that in the petition of Allen for leave to resign, reported in 29 Hun, 7, this question of commissions was the subject of consideration by that court, and expressly approves the rule there declared. I think this rule is salutary, and that the affirmance of this part of the judgment may safely rest upon it.

2. The committee of Catharine B. Bell raises a question that requires construction of the fourth clause of the will. By the fourth clause thereof the testator provides that the executors take in trust the residue of his estate, to invest and to let and "to apply and divide" the net income to and among his nephews George and Charles, and niece Mary, "equally, share and share alike, during the life" of testator's daughter Catharine, provided, however, that, if at any time the executors thought that the said daughter was in need of any part of said net income for support and maintenance, they should apply so much as seemed proper and right, but not to exceed $15,000 in any one year, to her use, and the residue should then be applied as heretofore directed. And he provides, further, that, if his said daughter should entirely recover from her affliction and subsequently marry and have lawful issue, and from and after the birth of said issue the whole of said net income should be applied to the support, maintenance, and education of his said daughter and her said issue during her life, and, upon her death leaving lawful issue her surviving, he gives and be-

queaths $50,000 to each of the living children of his sister and the residue to said lawful issue. He thereupon provides:

"And in case of the death of my said daughter leaving no lawful issue her surviving, then I give, devise and bequeath my said residuary estate as follows: One-third thereof to my nephew George Barker, to him, his heirs, executors, administrators and assigns forever."

Similar provisions are made as to the other nephew. The provision for the niece is that one-third should be held in trust for her during her life, and on her death that third was given, devised, and bequeathed to her lawful issue her surviving, with further provisions not necessary to set forth. It appears that the said daughter Catharine lives, is incompetent, is now confined in an asylum, and has been so confined for many years. George Barker died in 1907. The will contains no express provision for the disposal of the one-third of the net income that was to be paid to George during the life of Catharine, so that the question presented is as to the disposition of that part that has accrued since the death of George. There is no specific provision of the will that disposes of such an accumulation. It is settled upon construction of this very will that the estate of George Barker was a vested remainder. Stringer v. Young, 191 N. Y. 157, 83 N. E. 690. In the judgment, Gray, J., for the court says:

"By the express terms of his will, in case of the death of his daughter leaving no lawful issue her surviving, he gave, devised, and bequeathed to each one-third of his residuary estate. The duration of the trust which he created was measured by the life of his daughter, and upon its termination, with no intervening marriage and birth of children, the gifts of the estate are made in absolute terms. The conditions of the test as to the vesting of a future estate in remainder were satisfied, inasmuch as there was an absolute gift to designated persons then in existence upon the termination of a precedent estate, which might only be defeated by the happening of a contingency provided for in the will. The contingency did not affect the vesting of the interests given. It was a possible event, provided for by the testator, which should operate to divest those interests. It was not a gift limited to take effect upon an uncertain event. It was a gift which the uncertain event might chance to defeat."

George took the interest of the one-third of the income during his life as a tenant in common with his brother and sister (Tompkins v. Verplanck, 10 App. Div. 576, 42 N. Y. Supp. 412; Embury v. Sheldon, 68 N. Y. 227; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184), and hence his share thereof did not go to the survivors of them. I think that the disposition of this accumulation must be determined by invocation of section 40, tit. 2, art. 1, c. 1, pt. 2, 1 Rev. St. (now section 63 of the real property law [Consol. Laws, c. 50]), which is as follows:

"When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

Where is the next eventual estate? By that expression we mean "the estate which is to take effect upon the happening of the event which terminates the accumulation." Manice v. Manice, 43 N. Y.

303, 385. We have seen that George Barker took a vested estate at the death of the testator, and that such estate was alienable and devisable. As he left a will, I think that such estate passed thereunder to his executor, and that it is she who is entitled to the next eventual estate for the purposes declared by the testator. Matter of Tompkins, 154 N. Y. 644, 49 N. E. 135, and authorities cited. I think that the words "his heirs, executors, administrators and assigns" are to be construed as an expression of the character of the estate in George; that is, as words of limitation. Thurber v. Chambers, 66 N. Y. 42; Matter of Wells, 113 N. Y. 396, 21 N. E. 137, 10 Am. St. Rep. 457. The mere fact that the estate in remainder might be defeated by the contingency that the daughter of the testator may entirely recover and marry and leave lawful issue her surviving cannot affect the present disposition of the income. As Cullen, J., said in Tompkins v. Verplanck, supra:

"In this view, Marion's remainder was not divested by her death, but passed under her will to her devisee, and from him to his executor, the defendant Stephanie Morel. Whether it would be divested by the subsequent birth of issue of Jotham it is unnecessary to determine. Such an event would have no effect on the disposition of the surplus income accruing prior to the occurrence of the event. Jotham is 73 years old, and it is entirely probable that he may never have issue and that the question may never actually arise. We think it unwise to decide it now."

See, too, Kilpatrick v. Johnson, 15 N. Y. 322; Meldon v. Devlin, 31 App. Div. 146, 53 N. Y. Supp. 172; Delafield v. Shipman supra. In Phelps' Executor v. Pond, 23 N. Y. at page 83, the court say:

"The statute is founded upon the presumption that the donor of the property may naturally be supposed to intend that the income should go to the same person to whom he had given that out of which the income arises."

The disposition of the surplus income, whether from personal or real property, is the same. United States Trust Co. v. Soher, 178 N. Y. 450, 70 N. E. 970.

3. The appeal of the defendant Leavitt raises several other questions. One concerns the conduct of a trustee. This trustee is a lawyer. The estate is a large one, and some of the funds thereof are invested in bonds and mortgages. This trustee testifies that in a very few instances where mortgages were extended fees were charged to the mortgagor for drawing the extensions. In instances, in number between 10 and 20, the sum paid was $25, in one instance $50, and in another $75. In some instances the firm of which the trustee was a member collected and was paid examination fee on the title and fees for searches. In two instances of loans when money "was tight" the trustee received "a good substantial fee" from the borrower for the loan. It is to be noted, first, that the objections are taken in an accounting, so that the practical scope of this inquiry is whether the account should be surcharged with these sums. And it is to be noted second that none of these moneys was paid out of the trust estate. These sums were paid by borrowers in connection with the investment of moneys on loans made of the trust funds. There is no question about the principle, than which it is said nothing is better settled, that those standing in a fiduciary capacity "shall not take advantage of their situa-

tion to obtain any personal benefit to themselves at the expense of their cestuis que trust." Story's Eq. Jur. § 466a; Hill on Trustees, 535. See Ogden v. Murray, 39 N. Y. 207. And it is as well settled that an executor will not be allowed compensation for his own services as an attorney in the affair of the estate. Lent v. Howard, 89 N. Y. 179. But, so far as the fees for the extension of the mortgages are concerned, I do not understand that it is the duty of the mortgagor to prepare and to present the extension. The rule in this country in the absence of an express agreement to the contrary is that the expense incident to a loan on bond and mortgage for searches, for the preparation of the instruments, etc., is borne by the mortgagor. Maupin on Marketable Title to Real Estate, p. 164, citing Mart. on Ab. 9, citing Willard on Real Estate and Conveyances, 559. The mortgagee does not receive such expenses perforce of his loan, for his compensation is the return of his principal with the stipulated interest thereon; in other words, they are not a part of his profits. Services rendered in such matter to a mortgagee are not services in the affairs of the trust in the sense that a trustee, if he is a lawyer, is required as incidental to his trust duties to make searches and to prepare the instruments when the trust estate is the mortgagee. The English authorities which are cited by the learned counsel for the appellant do not apply because in England the vendor's solicitor prepares the abstract from the muniments of title in his possession, and it is the duty of the vendor to see that this is done. Maupin, supra, pp. 160–162. So far as the sum paid to the counsel by way of fees for procuring the loan, I think that they are not to be regarded as profits to be charged to the estate. Even in England no such principle has been recognized. Whitney v. Smith, L. R. 4 Ch. App. 513. In this very estate a motion was made to appoint an additional trustee, and in the judgment on the appeal taken thereon this court in its First Department said:

"The two trustees appointed by the Supreme Court, so far as appears, are properly administering the estate, and in so doing are looking after and caring for the petitioner's interest. The fact is not disputed that since they have assumed the management of the estate both the principal and income have been increased and on the settlement of their accounts it was found that they had 'fully and faithfully discharged their duties as such trustees.' The fact that one of the trustees, through the law firm of which he is a member, has profited to some extent by charges made against third persons dealing with the estate, does not militate against or destroy this finding. Nor do I consider it at all material on the question presented by the appeal. If the act of the trustee referred to be subject to the criticism made, that would be a proper matter for consideration if an application were made to remove him on that ground, but it furnishes no reason whatever why there should be an additional trustee, and especially so since it is not claimed that by reason of the charges referred to the trust estate has been in any way injured, or that the interest of any person interested therein has suffered thereby." Matter of Leavitt, 135 App. Div. 11, 119 N. Y. Supp. 772.

It is also urged that there should have been no finding that the funds were well invested. The referee reported that in his opinion the trustees have executed the trust in an economical and skillful manner, resulting in an increase of both principal and income, "and that the funds are well invested." The court before whom the report of the referee was returned found as follows:

"Seventeenth. That in retaining and making the investments shown on the said account of the said trustees and reported by the said referee the said trustees have acted properly, and that the retention of such investments as they have been retained and the making of such investments as they have made were for the best interests of said estate and within their lawful right and in accordance with their duty."

It is not contended on the points of counsel, nor do I recall that it was suggested on the oral argument, that there was any evidence to the contrary offered or elicited. And it is said in the printed points only that there was no evidence on the subject whatever presented by the plaintiff, except the bare statement by Trustee Dunning of the names of the various mortgagors and the amount of the various mortgages. In the first place, the trustees present a verified account that shows the various investments and the history and the present condition thereof in detail. I do not find that any objection was aimed against the investments or securities. Both trustees appeared for examination. One of them produced the various securities, and he was examined as to many of them. In the absence of any objection and of any adverse evidence, I think that it was not necessary for the accounting party to offer specific and detailed evidence in the first instance as to the worth and value of the securities before they were entitled to the finding of the court.

The other questions raised do not require discussion. Suffice to say that they cannot affect the judgment, which we think should be affirmed, with costs. All concur.