In the Matter of the Estate of JACOB SHUPACK, Deceased.

Surrogate's Court, Kings County, March 26, 1936.

*Louis Fieldman,* for Benjamin Chervin and William Berlind, as executors.

*Walter F. O'Malley,* special guardian for Oscar Shupack, incompetent legatee, and Sarah Gazes, daughter, whose whereabouts are unknown.

WINGATE, S.   Almost one hundred and ten years ago there was incorporated into the statutes of this State an enactment which read: " When in consequence of a valid limitation of an expectant estate, there shall be a suspense of the power of alienation or of the ownership, during the continuance of which, the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate." (R. S. pt. 2, chap. 1, tit. 2, § 40; 1 R. S. 726, § 40.)

Except for two wholly inconsequential verbal alterations, this statute has been continuously in effect up to the present time and is now incorporated in section 63 of the Real Property Law.

In view of the frequency with which conditions within the contemplation of this enactment must inevitably arise and the consequent multiplicity of adjudications respecting its meaning, it would have seemed almost inconceivable that any considerable lack of comprehension could exist among courts or well-informed members of the bar respecting its scope and effect.

The experience of the court has, however, demonstrated the contrary to be the case, wherefore, a somewhat more than passing review of the leading adjudications relative thereto would appear to possess some utility.

The testamentary directions which presently raise the question are contained in the fourth item of the will, which places the remainder of the estate in the hands of trustees for deposit in a savings bank with the following direction: " The moneys are to remain in their custody until Oscar Shupack is discharged from the hospital as cured in which event they are to deliver the funds to him.   In the event that he deceases before he is cured then I direct that the trustees distribute the funds among my wife and children *per capita.* It is my intention that Oscar Shupack do not receive any money unless he is cured."

A sentence in the fifth item should be considered in conjunction with this direction.   It reads: " In the event of need, the Trustees may pay my wife the interest on this fund provided in Fourth paragraph hereof."

Oscar Shupack is an incompetent adult son of the decedent.

It is obvious that except for the conditionally permissive authority granted the trustees by the portion of the fifth item quoted, there is no disposition of the income during the continuance of the trust. No valid direction for accumulation thereof has, or, indeed, could be given by reason of the fact that the son is an adult (*Matter of Meyer,* 140 Misc. 1, 4, 5; *Matter of Balsamo,* 136 id. 113, 115; *Matter of Friday,* 148 id. 899; *Matter of Forte,* 149 id. 327, 328; *Matter of Burroughs,* 155 id. 237, 241), wherefore, in so far as the authority of the trustees is not validly exercised in favor of the widow, there is no disposition of the income by the will, and the terms of the statute apply.

It is apparent on the facts disclosed that the frequently cited criterion for determining the identity of the distributees in such a situation, given in *Manice* v. *Manice* (43 N. Y. 303, 385), affords of itself no conclusive solution of the problem. The court there said: " The statute does not say the ultimate, but the next eventual estate. That is, the estate which is to take effect upon the happening of the event which terminates the accumulation. Those who presumptively will be entitled to receive the rents and profits when the period of accumulation ends, are entitled to anticipate the event which is to terminate the accumulation and to take at once the rents and profits which are undisposed of or unlawfully directed to be accumulated."

In the case at bar there are two alternative events either of which may terminate the period of accumulation. One is the restoration to sanity of the testator's son; the other, his death prior to recovery. On the former alternative, the son would be entitled to take; on the latter, testator's wife and children will be the recipients. The problem for solution is, therefore, as to which of these are the " persons presumptively entitled to the next eventual estate " within the contemplation of the enactment.

Before entering upon an analysis of the main question, it would seem not inappropriate to consider the nature and purpose of the statute itself. It is apparent that the main object of statutes relating to the affairs of decedents is to establish the manner of devolution of the property of a person who has died, and to regulate the procedure by which title thereto shall pass to another. Only two methods of devolution are recognized as such, the *first,* testate, in which the particular decedent himself, by instrument executed in accordance with specified formalities, directs the manner in which, and the persons to whom, his property shall pass, and the *second,* intestate, in which such disposition has not been made by the individual but is governed by substantive rules of law.

Obviously, since the average decedent is the owner of a number of different items of property, both modes of devolution may be, and frequently are, encountered in the same estate, and this condition is potentially multiplied by reason of the fact that as to any particular item of property a testator may make different varieties of gift. He may give it outright, in its entirety, to one or more persons if he desires. He may also divide his gift as to any particular item by donating the beneficial use thereof for a period of not exceeding two lives in being at his death to one individual or set of individuals, and give the ultimate possessory ownership to still others. (*Matter of Hartfield*, 139 Misc. 214, 216, 217; *Matter of Leonard*, 143 id. 172, 181, 182; *Matter of Shevlin*, Id. 213, 215, 216; *Matter of Milhau*, 151 id. 283, 289; *Matter of Kramer*, 153 id. 606, 607; *Matter of Loomis*, 154 id. 549, 552; *Matter of Byles*, 157 id. 46, 48; *Matter of Denniston*, Id. 80, 81.)

It is a basic concept of probate law that a given item of property must at all times be owned by someone with no intervening hiatus of ownership by reason of death (*Matter of Killough*, 148 Misc. 73, 86), even though the ascertainment of the identity of such owner may at times be fraught with difficulty or even be presently impossible of absolute determination. To that end, laws have been enacted from time to time which declare the description of such owner in those instances in which the decedent has failed validly to indicate his identity or description, and one of the main tasks of any court of probate jurisdiction is the identification and designation of the persons answering to these statutory descriptions.

The underlying feature and motivating purpose of all such enactments is, so far as may be determinable from customary human experience, to effect a devolution of the property of a decedent who has neglected to express his intentions in such connection, to those persons whom he would presumably have desired to benefit had his wishes been made known by him. (*Matter of Weissman*, 137 Misc. 113, 116; affd. on opinion of this court, 232 App. Div. 698; *Matter of Smallman*, 141 Misc. 796, 798.) Whereas, however, this is unquestionably the purpose of the particular Legislatures which enacted the pertinent statutes in this regard, their determinations when thus attained and crystallized into law, become substantive rules of devolution and, since all such questions are within the absolute constitutional authority of the Legislature on the theory that all property belongs to the sovereign and succession thereto is a privilege granted by grace (*Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 288; *Knowlton* v. *Moore*, 178 id. 41, 47), they become absolute rules of property and are not subject to variation except by the power which generated them.

The most familiar instance of this type of legislation is that presently contained in sections 80 *et seq.* of article 3 of the Decedent Estate Law, familiarly known as the Statute of Distribution, which provides in general for cases of intestate devolution. It is, however, entirely patent that section 63 of the Real Property Law, which is the subject of the present discussion, is equally a statute governing intestate devolution, albeit its operation is confined to the limited situations particularly described therein, where a valid trust has been created but a portion of the income thereof has not been made the subject of lawful direction.

It must consequently follow, as a deduction of pure logic, that in the situations to which, by its terms, it purports to apply, it is just as conclusive in respect to the particular intestate (undirected) devolution involved, as is its more generally applicable fellow incorporated in the Decedent Estate Law. To it must inevitably apply the basic principle that " there is no relief against the provisions of a statute any-where " (*Thompson* v. *Egbert,* 17 N. J. L. 459, 462), and that it is not a function of the judiciary to amend, emasculate or disregard statutes solemnly enacted by the legislative branch of the government. (*Akin* v. *Kellogg,* 119 N. Y. 441, 447; *Matter of LaRocca* v. *Flynn,* 257 id. 5, 15; *People* v. *Ryan,* 230 App. Div. 252, 256; *Matter of Ayvazian,* 157 Misc. 306, 310.) The power and duty of the courts is to apply and effectuate existing laws, not to make new ones; to interpret and enforce governmental policies, not to create them. (Beale Conflict of Laws, § 71; *Bank of Augusta* v. *Earle,* 13 Pet. 519, 589; *Cross* v. *U. S. Trust Co.,* 131 N. Y. 330, 340; *Matter of Killough,* 148 Misc. 73, 79.)

The words of section 63 are, on ordinary principles of construction and connotation, all-embracing and supply an exclusive rule of devolution in those situations contemplated by its provisions, which are " when, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given." This is the variety of situation to which this particular statute governing intestate devolution applies, and when these facts exist, the Legislature has mandatorily directed that " such [undisposed of rents and profits] shall belong to the persons presumptively entitled to the next eventual estate."

The fixation of this preliminary point of universal applicability of this statute is necessary at the outset, since otherwise the law which is to govern particular questions of this type might be in doubt, with markedly diverse results attainable depending on whether this statute or section 83 of the Decedent Estate Law were deemed applicable.

This court might be inclined to deprecate so extended a discussion of this phase of the question were it not for the apparently contrary determination in *United States Trust Co.* v. *Soher* (178 N. Y. 442). The trust adjudicated in that case was measured by the lives of two sons. Specified amounts of income were payable annually to each. On the death of either, one-half of the principal fund was distributable to the surviving children of the one dying, or in default of such issue, to his brother, whose was the other measuring life. There was a large surplus of income derived from the trust. At the time the disposition of this fund was presented for adjudication neither son had married. One was an adult and the other an infant of tender years. The court determined (at p. 450) that until the birth of grandchildren of the testator (children of the life beneficiaries) the statute did " not apply " and that the excess income passed as intestate property.

The basic theory of the law, as noted above, is that there must inevitably be a " next eventual estate," and, as is amply demonstrated by the authorities hereinafter cited, such estate is no less an estate within this description because it complies with the usual characteristics of one which is vested subject to divestment or contingent, as these terms are commonly used in the law. (See *Matter of Terwilligar*, 135 Misc. 170, 184; affd. on opinion of this court, 230 App. Div. 763.) On the facts in the *Soher* case, each son, on the erection of the trust, received a contingently vested remainder interest in one-half of the trust principal, which was subject to divestment only in the event that his brother predeceased him leaving issue. As a result, in accordance with the rules hereinafter noted, he was the person then presumptively entitled to the next eventual estate following that of which his brother was the life beneficiary, and must continue so to be, until his place in that regard was taken by issue born to his brother. By application of this statute, therefore, he became absolutely entitled to one-half of the surplus income as it accrued.

The determination in the *Soher* case would be a subject of greater concern to one attempting to ascertain the correct legal principles applicable to cases of this type had subsequent pronouncements of the appellate courts of the State exhibited any tendency to follow its holding in this regard. An investigation discloses, however, that in the thirty-two years since it was rendered, it has been cited only twice in opinions in the Court of Appeals, once in *Matter of Kohler* (231 N. Y. 353, 377), where it was held " inapplicable," and once in the dissenting opinion in *First National Bank & Trust Co.* v. *Palmer* (261 N. Y. 13, 23), in which its doctrine, if representing the law, might conceivably have been conducive to a result differ-

ing from that attained by the majority of the court. Its rule has never been followed in any Appellate Division opinion which the research of the court has disclosed, and apparently the only instance of its application in a published opinion in a court of first impression is in *Matter of Ready* (132 Misc. 616).

The conclusion appears reasonable, therefore, that its determination is to be deemed overruled *sub silentia* and that the provisions of section 63 of the Real Property Law furnish the sole applicable criterion of devolution in the situations which it purports to cover.

No serious difficulty is to be apprehended in determining whether, in any given case, the conditions are present which are enumerated as conditions precedent to the applicability of the statute. They are, *first*, a valid limitation of an expectant estate involving suspense of power of alienation or ownership; *second*, a failure to direct the disposition of the full income during such period, and *third*, no valid direction for accumulation. The varieties of testamentary directions in which such conditions are potentially possible are extremely numerous and no good purpose would be served in a review of the particular situations which have formed the basis of previous adjudications except in the limited class of instances in which they may serve to clarify a particular result attained.

The question of importance, and the main source of difficulty in the application of the section, involves the determination of the identity of the " persons presumptively entitled to the next eventual estate," to whom the undirected sums pass by virtue of the statutory fiat.

The underlying theory of the statute, as stated in *Manice* v. *Manice* (43 N. Y. 303, 385), is entirely patent, to the effect that " those who presumptively will be entitled to receive the rents and profits when the period of accumulation ends, are entitled to anticipate the event which is to terminate the accumulation and to take at once the rents and profits which are undisposed of or unlawfully directed to be accumulated."

Whereas, therefore, the testamentary directions respecting the estate existing during the period of the unlawful accumulation or incomplete direction must be analyzed as a preliminary matter, to determine whether or not the statute is applicable, the testamentary provisions in this regard become wholly immaterial if this question be decided in the affirmative. The sole inquiry must then be directed toward ascertaining the identity of the individuals who are beneficially entitled to the use or possession of the corpus upon the termination of the estate during which such unlawful accumulation or inadequate direction is to continue pursuant to the testamentary plan.

The search is for the *next* eventual estate, not the ultimate possessory enjoyment. These may, of course, be the same, but are not necessarily so, since the improper or inadequate direction may occur in a primary trust which is to be followed by a secondary one before ultimate possessory enjoyment is to be awarded. Under such circumstances, the beneficiaries of the secondary trust, if in being at the time the question arises, are the persons presumptively entitled to the *next* eventual estate. (*Manice* v. *Manice,* 43 N. Y. 303, 385.)

In the search for the recipient of the ungiven or unlawfully accumulated income, two situations are obviously conceivable. The person thus entitled to the next eventual estate may either be definitely determinable from the provisions of the will itself or from the operation of the general rules of intestate devolution, or the interest may be conditional upon the occurrence or non-occurrence of extraneous events, happening subsequent to the effective date of the will and prior to the arrival of the time for possessory enjoyment.

The former alternative is much the simpler and includes all cases in which the donee of the next eventual estate is given an absolutely vested interest or one subject to a possible divesting condition which has actually occurred. In strict conformity with the noted fact that a testator may subdivide his gifts of any particular item of property into the use thereof for not exceeding two lives in being at the date of his death, and ultimate possessory enjoyment after the termination of such period, so he may make absolute gifts of either of such parts of his entire ownership to different individuals, and when this has been accomplished, the interest given, even if only a use for a period, becomes the indefeasible property of the donee which, in the event of his predecease of the time of beneficial enjoyment, will pass by virtue of his will, or instrument of assignment, or will devolve in the event of his dying intestate, precisely as would any other item of property of which he is the absolute owner.

It is this type of case which has most frequently engaged the attention of the courts and it has been their invariable determination that when the next eventual estate was absolutely vested, unlawfully accumulated or inadequately directed income during a preceding estate was payable to such absolute owner, if living (*Manice* v. *Manice,* 43 N. Y. 303; *Matter of Harteau,* 204 id. 292; *Matter of Shea,* 106 Misc. 222; *Matter of Hanna,* 155 id. 833; *Matter of Fishberg,* 158 id. 3), or to his assignee (*Matter of Dimond,* 138 Misc. 648), or, in the event of his predecease, to his legatee, or executor or administrator (*Embury* v. *Sheldon,* 68 N. Y. 227; *Matter of Tompkins,* 154 id. 634, reported below *sub nom. Tompkins* v. *Verplanck,* 10 App. Div. 572;

*Matter of Ossman* v. *Von Roemer*, 221 N. Y. 381; *Young* v. *Barker,* 141 App. Div. 801; *Matter of Boggs*, 122 Misc. 73; *Matter of Spitz*, 129 id. 78; *Matter of Dimond*, 138 id. 648).

*Pruyn* v. *Sears* (96 Misc. 200) and *Matter of Grant* (147 id. 453) are of especial interest in this connection as demonstrating the theoretically obvious fact that the ownership of the next eventual estate may arise by virtue of the operation of the general intestacy laws as well as by direct gift of the testator himself. In both there was a complete failure of the will to make any gift beyond that of the primary trust in which the partial failure of a gift of the income occurred. Obviously, therefore, such remainder passed, at the time of the testator's death, to his statutory distributees as a vested interest, and they were, in consequence, unquestionably the persons absolutely entitled to the estate which would come into being after the one in which the inadequate direction was present.

A number of adjudications have been made which have purported to determine the issues on the basis of the principles just discussed which in reality presented wholly dissimilar problems. These are *Delafield* v. *Shipman* (103 N. Y. 463); *Levi* v. *Scheel* (124 App. Div. 613); *Staples* v. *Mead* (152 id. 745); *Tredwell* v. *Tredwell* (86 Misc. 104); *Matter of Daggett* (130 id. 635), and *Breen* v. *Conway* (135 N. Y. Supp. 140, not otherwise reported). In each of these, valid trusts were erected with specified portions of the income payable to named individuals, and with remainder gifts to the same persons. In each, one of the specifically named income beneficiaries predeceased the termination of the trust, and in each, the respective courts determined that the income which would have been paid to the income beneficiary had he continued to live until the expiration of the trust, was payable to his estate, legatee or assignee. The results in each instance were unquestionably correct, but the application of the statute under present discussion in effecting such devolution would seem open to criticism. In each instance the respective testators had made an absolute gift of the use of a specified portion of his estate for a given period to the particular beneficiary who died. This gift vested the complete subject-matter thereof in the donee from the effective date of the will wherefore the condition precedent to the operation of section 63 of the Real Property Law, of a testamentary failure to direct a portion thereof, was absent and this statute, by its very terms, did not apply to the situation. The results attained were, however, unexceptionable for the reason that the gift of income for the specified period having validly vested, could not be divested by the death of the donee but would pass like any other property of which he was the unconditional owner.

Unfortunately for the peace of mind of the bench and bar, however, all of the problems arising under the statute are not capable of as ready solution as those heretofore considered. The foregoing cases were concerned merely with its application to situations in which designated persons were absolutely entitled to the next eventual estate. The language of the enactment, however, goes farther and creates rights in favor of those who are merely " *presumptively* " entitled thereto.

Whereas the definition of " the next eventual estate," given in *Manice* v. *Manice* (43 N. Y. 303, 385), as " the estate which is to take effect upon the happening of the event which terminates the accumulation," unquestionably furnishes a sufficient criterion for its identification in the usual case, it is inadequate in those instances which are of not infrequent occurrence in which the existing estate during which the undirected accumulation accrues is to terminate on the happening of any one of a number of specified contingencies with differing remainder devolutions depending on the particular contingency which chances to eventuate. It is in such cases that this additional word, " presumptively," in the statutory designation of the recipient, assumes preponderant importance and meaning. As hereinbefore noted, it is the basic theory of the law that every single piece of property is at all times completely owned by one or more persons, and the fact that at some particular point of time it may be impossible to determine with absolute assurance the identity of the particular individual or individuals who will ultimately be entitled to receive it in possession, does not alter this fact. For convenience in description the courts are accustomed to designate such future remaindermen as the possessors of contingent remainders or remainders vested subject to being divested. As to any such person, the respective appellations are no more than an abbreviated method of saying that whereas the given individual may, by the terms of the particular gift, be entitled to receive the subsequent estate granted, as being within the description of a donee thereof, yet the gift to him has been made subject to a condition which may result in the utter destruction of his potential right.

In every case within the contemplation of the present statute, an actual intestacy arises immediately upon the accrual of any item of income the disposition of which has not been validly directed by the testator. This, under the theory of law noted, belongs to some one. In those cases in which the remainder is not indefeasibly vested, it is impossible to fix definitely the owner thereof at the moment when the intestacy occurs. The determination of the course of its devolution cannot be permitted to await

the time when the fact of ultimate ownership is capable of precise ascertainment, since such a course would countenance the very accumulation which the law has forbidden. In an effort to effectuate the wishes of the testator in so far as may legally be possible compatibly with public policy, it is accordingly provided that the undirected or invalidly directed sum shall be presently paid to those persons who, in the natural course of human events, as they appear at the time, will be entitled to receive the next beneficial interest in the particular property. "The persons who take are those presumptively entitled at the time the income accrues, although," by the happening of legally unforseeable contingencies, "the estate. eventually goes elsewhere." (*Meldon* v. *Devlin*, 31 App. Div. 146, 157; affd., 167 N. Y. 573.) "The mere fact that the estate in remainder might be defeated by the contingency" of a legally unpredictable occurrence "cannot affect the present disposition of the income" under this statute. (*Young* v. *Barker*, 141 App. Div. 801, 807.)

In their recognition and effectuation under this statute, the distinctions between contingent remainders and those which are vested subject to whole or partial divestment, become unimportant. In both there is inevitably a person or class of persons who will be entitled to the remainder in the ordinary course of events provided some specified unpredictable occurrence does not transpire which will divert it to another. The persons answering that description at any given time are those who are then "presumptively entitled to the next eventual estate." They are conditionally vested with the estate in the remainder, but the enjoyment of such estate is possible of defeat by the occurrence of a legally unpredictable event, which is merely another method of saying, "An event concerning the occurrence of which the law will not indulge any presumption."

With a few occasional exceptions, which will later be noted, the present statute has uniformly been applied to such situations. A brief review of the instances in which benefited remaindermen were at the time of receipt of undirected income possessed of interests which were classifiable as vested subject to divestment or genuinely contingent, will be of interest.

In *Gilman* v. *Reddington* (24 N. Y. 9) the remainder was payable to three named children or to the issue of any who predeceased the termination of the trust leaving issue.

The court held (at p. 19) that the surplus income after the end of the minorities of the children was payable to the children then living as the persons presumptively entitled to the next eventual estate, in spite of the fact that their interests might be divested

in favor of their issue in the event of their predecease of the date of termination of the trust.

In *Matter of Crossman* (113 N. Y. 503) a trust was erected from the residue of the estate with the principal thereof payable to H. when he attained the age of twenty-eight years. If he died before attaining that age it was payable to his issue, if any, but if no issue survived him, the income was to be applied for the benefit of testator's widow for her life, and on her death the principal was to be distributed among the next of kin of the testator. The will contained no direction respecting the income from the fund prior to the death of H. or his attainment of the age of twenty-eight. The court held (at p. 510) that the income was payable to H. as it accrued after the testator's death on the ground that he was the presumptive owner of the next eventual estate.

In *Schermerhorn* v. *Cotting* (131 N. Y. 48) a trust was erected of one-third of the residue of the estate measured by the life of the widow, with income in specified amounts payable to a son during its continuance. On the death of the widow and the attainment by the son of the age of thirty years, the remainder was payable to the son, if living, and if not living, as appointed by his will, or in default of appointment to the issue of the son. In default of both it was payable to the children of testator's brother. The court held (at p. 61) that income which was received in excess of the specified sum directed to be paid should pass to the son after he attained the age of twenty-one years, on the ground that he was the person presumptively entitled to the next eventual estate.

In *Cochrane* v. *Schell* (140 N. Y. 516) a residuary trust was measured by the life of testator's daughter, and provided for the payment of annual sums aggregating $20,000. On her death the principal of the trust was payable to those certain named grandchildren who should then be living, or to the issue of any of their number who had died leaving issue. The trust produced an income of approximately $6,000 annually in excess of the sums directed to be paid. The court held (at p. 540) that such excess income was payable to the grandchildren named who were living at the time of its accrual, as the persons presumptively entitled to the next eventual estate.

In *Matter of Kohler* (231 N. Y. 353) the testator erected trusts in specified principal sums for each of his daughters, providing that $25,000 annually should be paid them respectively from the income, and that they should receive $100,000 of their respective principals as they severally attained the ages of twenty-five, thirty-five and forty-five. In each trust the balance of prin-

cipal upon the termination of the trust was payable to the issue of the particular life tenant, or in default of issue, to the residue of testator's estate. The question as to the disposition of the annual income over $25,000 arose during the continuance of the lives of the life tenants, and the court held (at p. 375) that such excess income was payable to the respective daughters as the persons presumptively entitled to the next eventual estate.

No direct remainder gift was made in *Meldon* v. *Devlin* (31 App. Div. 146; affd., 167 N. Y. 573), the only direction in respect thereof being that upon the termination of the trust the principal should be payable to such of testator's relatives as the surviving trustee should appoint. At the time of the presentation of the question no appointment had been made, in default of which the court held that the remainder was presumptively payable to the next of kin of the testator, saying (at p. 158) the next of kin of the testator " obtained a vested interest in  *  *  *  the trust fund  *  *  *  subject only to be diminished or defeated by a different appointment  *  *  *  consequently these relatives were entitled to the next eventual estate and the undisposed of income belongs to them."

The latest ruling of the Court of Appeals on this subject is found in *Matter of Jacobs*, which arose in Delaware county (150 Misc. 381). Under the will a legacy of $3,000 was given to enable R. to take an approved college course before she attained the age of twenty-five years, with a further provision that if she failed so to do, the gift should pass to C., or in the event of C.'s death to the youngest child of T. When R. had attained the age of twenty-two years she had failed to take the course. The question propounded concerned the income of the $3,000 fund received between the date of the death of the testator and the time when the question was presented to the court. The surrogate held (at p. 384) that the income after R. attained the age of twenty-one was payable to C. as it accrued, and in the event of her death, to the youngest child of T. This result was reversed by the Appellate Division (244 App. Div. 161), which held that it was payable to R. until she attained the age of twenty-five years. The memorandum opinion of the Court of Appeals (269 N. Y. 588) is not clear, since, whereas it purports to modify this determination of the Appellate Division, it attains the same result.

In *Matter of Murphy* (213 App. Div. 319) testator made an outright gift of the residue of his estate to his wife and five named children to be paid to them upon the survivor of his two youngest children reaching the age of twenty-one. The only disposition of the income in the interval was that seventy-five dollars monthly

should be paid. The court held (at p. 322) that the income in excess of this sum was payable equally to the widow and five children as it accrued, on the ground that they were the persons presumptively entitled to the next eventual estate.

*Matter of Glass* (126 Misc. 728; affd., 215 App. Div. 710) is a borderland decision. There a trust was erected for a period to terminate when testator's son attained the age of twenty-five. The income, until the son attained twenty-one, was applicable for his maintenance and between twenty-one and twenty-five was to be paid to him and to the testator's widow in equal shares. If the son attained the age of twenty-five, the principal was payable to him outright. In the event of his predecease of that age leaving issue, the latter were to receive the principal, otherwise it was to pass to testator's two daughters. The widow predeceased the termination of the trust and the question presented concerned the disposition of that portion of the income which was payable to her under the terms of the will. The learned surrogate held that it was payable to the son as the person presumptively entitled to the next eventual estate. This result is correct and analogous to that in the *Jacobs* case if the rights of the widow to the income be deemed purely contingent as is arguable by reason of the fact that the sole donative direction in respect to her was for payment. If, however, her interest in the income during the continuance of the trust were to be held vested, the case would be analogous to *Delafield* v. *Shipman, Levi* v. *Scheel* and *Staples* v. *Mead* (*supra*), and the income accruing after her death should have been awarded to her estate as an absolutely vested interest.

The final case for note in this classification is *Hill* v. *Hill* (124 Misc. 98), decided by the Supreme Court for Broome county. The trust was measured by the lives of two adults. During its continuance the income was to be used for the purpose of making specified payments monthly to each adult and for each of four infants until they respectively attained the age of eighteen years. The remainder was given to the same four infants, or their issue, in the event of their predecease. The court held (at p. 101) that the four infants were entitled to undirected income which was received as the persons presumptively entitled to the next eventual estate.

This result was unquestionably correct and is to be compared with that of *Matter of Eickelberg* (135 Misc. 581), in which four trusts were erected measured by the lives of two sons, with income during their continuance payable in equal parts to two sons and two daughters. On the death of the survivor of the two sons, one-quarter of the corpus was to be paid to the daughters if living,

or to their children if dead, and to the children of the sons. Other directions were made in default of issue. At the time of the determination, the two sons were still living and the two daughters were dead. The court held that the income which would have been payable to the deceased daughters if they had continued to live was payable in equal parts to the daughters of one of the deceased daughters and to the two sons, in purported compliance with section 63 of the Real Property Law. Since the only persons who are entitled to take under the statute are the persons presumptively entitled to the *next* eventual estate, and such estate could not come into being until after the death of the two sons who would obviously not then be in being, this court cannot concur in the result which included the measuring lives as distributees.

In the eleven cases last reviewed, the interests which were effectuated as entitled under the terms of the statute, were classifiable, when viewed as of the time of the testator's death, as vested subject to being divested.

In the following four instances the remaindermen who were held entitled received purely contingent gifts; *Kilpatrick* v. *Johnson* (15 N. Y. 322, gift to daughters' children); *Cook* v. *Lowry* (95 id. 103, issue of daughter); *Central Union Trust Co.* v. *Trimble* (255 id. 88, issue of T.); *Matter of Doherty* (227 App. Div. 265, testator's grandchildren). In each of these cases the gift of the remainder, which was the next eventual estate, was purely to a class, but a person answering the description of a class donee was in existence at the time the income accrued and was, therefore, correctly determined to come within the description of a person presumptively entitled to the next eventual estate. The operation of the statute in such a case is clearly stated in *Kilpatrick* v. *Johnson* (*supra*, at p. 326): " Assuming that the daughters each had children at the death of the testator, some or all of whom are still living, * * * they are the persons presumptively entitled to the next eventual estate. I am of opinion that they take the whole of the interest upon their mother's shares during the time they continue to be thus presumptively entitled. As to the children born subsequent to the testator's death, and those yet to be born, they are to come in and share in the income which may accrue after they become presumptively entitled to a share of the next eventual estate in the principal of the fund." To this statement may be added, that if any of those who were entitled to take in one of such distributions should chance to die before the time for the making of another arrived, they would be automatically eliminated from any share, since by reason of their deaths they were no longer

presumptively entitled to participate in the ultimate class remainder gift.

It is obvious from this review that the same principles control whether the remainder, when viewed from the time of testator's death, is classifiable as vested subject to divestment by the operation of a condition subsequent, or as contingent, so long as there is in being a person when the undirected income accrues, who is within the description of the remainder donee, and that a person will be entitled to receive such undirected income in spite of the fact that the divesting condition subsequent may later occur and, as a result of such happening, he be deprived of actual participation in the remainder distribution when the time therefor arrives.

Analysis of the remainder gifts in these cases demonstrates that in each instance alternative recipients of the final remainder gift were either expressly or impliedly named. Viewing the matter from the standpoint of the respective donees of these benefits, the actual receipt of the ultimate gift was made subject to a condition.

In *Gilman* v. *Reddington* the gift was to the three children or to the issue of any who predeceased the termination of the trust. In other words, there was a gift to each of the children on condition that it survived the termination of the trust, but none if the condition did not meet with compliance. Conversely, there was a gift to the issue of a particular child, but this gift was made subject to three conditions, *first*, that such descendant should be born; *second*, that its parent predeceased the termination of the trust, and *third*, that the particular child himself survived the termination of the trust.

The conditions attached to the gift to the primary remainder donees in *Matter of Crossman, Schermerhorn* v. *Cotting, Matter of Kohler* and *Matter of Glass* were similar. In each it was that the favored individual should attain a specified age. The gifts to the alternate donees were in each instance primarily conditioned on the failure of the primary donee to meet the specified condition. At the time the question was presented for adjudication in each case, the primary donee had not as yet fulfilled the condition, but was still alive so that compliance was still possible and in each it was determined that he was *presumptively* entitled; in other words, that there was a " presumption " that the condition imposed upon the final effectiveness of the gift to him would be met.

The situation in *Matter of Jacobs* was still further complicated by an addition to the condition of survivorship of one that the primary donee should take a specified course of higher education before attaining the age of twenty-five. She had not yet attained

that age so that compliance with both conditions was still possible. On the other hand, the gift to the alternate remainderman was expressly made subject to the condition precedent that R. did not attain the age of twenty-five and, in the interval, take the course. It was, in effect, held by the appellate courts that there was no *presumption* that these conditions would not meet with compliance, wherefore, such alternate remainderman could not receive as " presumptively " entitled.

These, and all similar theoretically correct determinations, are obviously based on three basic concepts of the law: *First,* that an estate will be held to vest (either absolutely or conditionally) *at the earliest possible moment (Riker* v. *Gwynne,* 201 N. Y. 143, 149; *Bowditch* v. *Ayrault,* 138 id. 222, 228; *Whitman* v. *Terry,* 196 App. Div. 282, 287; *Williams* v. *Williams,* 152 id. 323, 325; *Russell* v. *Furness,* 83 Misc. 499, 504; *Matter of Milhau,* 151 id. 283, 289); *second,* where the conditions imposed upon the primary remaindermen are conditions subsequent, by reason of the fact that " the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and \* \* \* may be as well done after as before the vesting of the estate " ( *Underhill* v. *Saratoga & Washington R. R. Co.,* 20 Barb. 455, 459; *Ludlow* v. *N. Y. & Harlem R. R. Co.,* 12 id. 440, 442); the gift or conveyance which is subject to defeat by failure of compliance with such condition subsequent will be held to vest the estate in the donee or grantee " as long as the conditions existed unbroken " (*Calvary Presbyterian Church* v. *Putnam,* 249 N. Y. 111, 115; *Fowler* v. *Coates,* 201 id. 257, 262; *Vail* v. *Long Island R. R. Co.,* 106 id. 283, 287; *Mott* v. *Richtmyer,* 57 id. 49, 66; *Beardslee* v. *Beardslee,* 5 Barb. 324, 330; *Weiss* v. *City of Mount Vernon,* 157 App. Div. 383, 387; affd., 215 N. Y. 657; *Matter of Johnson,* 133 Misc. 566, 567; *Matter of Smallman,* 141 id. 796, 803); and *third,* there was no *presumption* either that the divesting condition would occur or that the condition precedent, through the operation of which alone the alternative estate could come into being, would happen.

In the opinion of the court, the third feature noted has received inadequate attention in the consideration of the legislative intention in the enactment. The statute refers to those " *presumptively* " entitled. It is obvious on basic principles of statutory construction that this word must be accorded due attention in the given process of interpretation. In the quotation from *Manice* v. *Manice,* first above given, stress was laid thereon as demonstrating a legislative differentiation between those persons who, at the moment of adjudication, seemed likely to receive the next estate,

and those who, as a result of future eventualities, might actually acquire it. Whereas this conception probably carries in it the implication of the further connotation of the term which this court conceives is inherent therein, such fact is not self-demonstrating.

Basically, a presumption is merely an inference of fact adduced from customary human experience, on proof of circumstances that usually or necessarily attend such fact. (*Matter of Callahan*, 142 Misc. 28, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524.) Relevant to the present discussion, it has been held that a condition once shown to exist is presumed to continue. (*Matter of Hagan*, 157 Misc. 378, 380; *Matter of Goldman*, 156 id. 817, 818; *Matter of Kotlik*, 152 id. 802, 804, and authorities cited.) Thus the existence of life on a given date will give rise to an inference of fact or presumption that it will continue in future. (*Young* v. *Shulenberg*, 165 N. Y. 385, 389; *O'Gara* v. *Eisenlohr*, 38 id. 296, 299; *Dietrich* v. *Dietrich*, 128 App. Div. 564, 571; *Dworsky* v. *Arndtstein*, 29 id. 274, 278; *2409 Broadway Corporation* v. *Lange*, 128 Misc. 118, 119; *Matter of Katz*, 135 id. 861, 867; *Eagle* v. *Emmet*, 4 Bradf. 117, 123.)

Of course, there is no inference or presumption that life will continue indefinitely, since human experience is to the contrary; but the law will not presume the point of time, at least within ordinary limits, when life will cease, and will not attempt to say as to which of two persons will survive the other. (Cf. *McGowin* v. *Menken*, 223 N. Y. 509, 511; *Matter of Fowles*, 222 id. 222, 229; *St. John* v. *Andrews Institute for Girls*, 191 id. 254, 272; *Newell* v. *Nichols*, 75 id. 78, 89; *Matter of Englebirt*, 184 App. Div. 314; *Matter of McInnes*, 119 id. 440, 441; *Matter of Hayward*, 143 Misc. 401, 402; affd., 237 App. Div. 823.)

It follows that where a remainder gift is made to a certain person providing he is living when the time for distribution shall arrive, but if he shall predecease such time, to others, and it is shown that he is living at the time the question arises, there is a *presumption* that he will still be living at the subsequent critical time unless such time is beyond the range of human *possibility*, wherefore he is the person who is " *presumptively* " entitled to the future distribution. This thought if effectuated in conjunction with the two others enumerated, will be found helpful in a solution of substantially all problems which may be encountered in a determination of " the persons presumptively entitled to the next eventual estate " under this statute.

An analysis of a few additional adjudications will be of aid in attaining a conception of the application of the principles discussed

By the will in *Schettler* v. *Smith* (41 N. Y. 328) a trust was erected of one-quarter of the residue of the estate with the income, to the extent of $800, payable annually to a daughter until her marriage. On her marriage, if she did not marry one Schettler, or on the death of Schettler, all income earned by the fund from the date of testator's death was to be paid to her. If she married Schettler all rights in the trust in her favor were to terminate and the principal was to be distributed to testator's other children then living. Some years after testator's death the daughter married Schettler. The court held (at pp. 340 and 341) that the portion of the income in excess of the $800 per year which had accrued prior to her marriage belonged to the daughter as the one presumptively entitled to the next eventual estate.

Here was clearly a case within the contemplation of the statute now under consideration. The directed accumulation of the income above $800 per annum being measured by the life of an adult, was invalid, and by the terms of the statute must pass to the person presumptively entitled to the next eventual estate. This next estate would belong either to the daughter or to the other then living children of the testator. The daughter would be entitled to receive it if she did not marry Schettler; the others, if she did. Viewing the matter as of the time of receipt of any item of excess income prior to her marriage, there was no presumption that she would contract the inhibited marriage. On the other hand, there was an inference or " presumption " that she would continue to live. The next estate was vested in her subject to the occurrence of the divesting condition subsequent that she did so marry. Consequently the excess income as it accrued became payable to her, and the fact that the question was not presented until after the condition divesting her right had occurred, could not deprive her of the rights which had previously accrued to her by the operation of the statute.

One of the results attained in *St. John* v. *Andrews Institute for Girls* (191 N. Y. 254) was similar. There the testator directed the formation of an educational corporation and gave to it the excess of his estate over the sum of $500,000, providing that if the gift failed because of illegality or impossibility of execution such excess portion of his estate should go to the Smithsonian Institution. The question presented was as to the devolution of the income received on the portion of his estate above $500,000 between the date of testator's death and the organization of the corporation. The court held (at p. 279) that the conditional limitation on the gift over to the Smithsonian Institution had never been fulfilled since the gift was valid and capable of execution

in consequence of which the Smithsonian Institution never took any interest in the excess capital of the estate.

The converse of this situation appeared in *Matter of Grossman* (131 Misc. 526). There the will erected a trust measured by the life of the widow, with income so far as necessary to be used to pay for the upkeep of a home for her, any balance of income being payable to a specified charity. On the termination of the trust the corpus was payable to the charity. The will further provided that if any part of the remainder gift to charity was invalid as in violation of section 17 of the Decedent Estate Law, such invalid part should be paid to specified nephews and nieces. The remainder gift to charity was excessive. The court held (at p. 532) that the income from the portion excessively given to charity was payable to the nieces and nephews as the persons presumptively entitled to the next eventual estate. Here, obviously, the gift to the charity was defeated *ab initio* by the divesting condition subsequent, wherefore the alternate conditional donees were entitled to take by reason of the occurrence of the condition precedent to their gift prior to the accrual of the inadequately directed income.

It may frequently happen that a correct analysis of the attempted gift and the annexed conditions may be difficult by reason of the manner of their statement in the testamentary document. Such an instance is found in *Matter of Segura* (110 Misc. 624), in which a trust was erected with the direction that $300 of its income per year be paid to A. If she became a widow the entire principal was to be payable to her at once. If she did not become a widow, then, upon her death, $5,000 of the principal was payable to P., and the remainder to specified charities.

Since, at the time the question arose, A. was not a widow, the operation of the presumption of continuance of an existing condition would result in an inference that this condition would continue until the time of her death. If this result eventuated, the remainder was to pass, $5,000 to P., and the balance to the charities. The only condition which would disturb this result was that the husband of A. should predecease her. This was a condition precedent to any right of A. to participate in the remainder distribution, but the law, as hereinbefore noted, will indulge no inference or " presumption " that one person will predecease another. It follows, therefore, that A., during the continued life of her husband, was not a person " presumptively " entitled to the next eventual estate, wherefore the inadequately directed income should pass to P. and the specified charities. The contrary result of the court in that case would, therefore, appear clearly erroneous.

Perhaps the presently most interesting determination from a factual standpoint is found in *Young* v. *Barker* (141 App. Div. 801). So far as presently material, the trust there in question was measured by the life of an incompetent daughter. So much of the income as might be needed in the discretion of the trustee was to be devoted for the use of the daughter, with any remainder payable to a named nephew. It was further provided that if the daughter recovered, married and had issue, the entire income should be used for the maintenance of the daughter and such issue, and upon the death of the daughter $50,000 of the principal should be paid to the nephew and the balance to the issue of the daughter. It was further provided, however, that if the daughter did not recover competency, and had no issue, the principal should be paid to the nephew. The nephew predeceased the daughter. The latter had not regained her sanity. In a previous construction proceeding the interest of the nephew had been held vested. The court held (at p. 807) that the undirected income during the continuance of the daughter's life was payable to the executor of the nephew, saying, " The mere fact that the estate in remainder might be defeated by the contingency that the daughter * * * may entirely recover and marry and leave * * * issue her surviving, cannot affect the present disposition of the income."

Obviously, here the remainder, from the date of the death of the testator, was vested in the nephew subject to a series of divesting conditions subsequent, as to all but $50,000 thereof, that the daughter should recover, marry, have issue and that such issue should survive her. The first three of these conditions were ones concerning which the law would indulge no inference as to their occurrence. There is no presumption that a person presently insane will attain soundness of mind. Indeed, the inference of the probable continuance of an existing condition is to the contrary. The same observations apply to the conditions of marriage of an unmarried person and the having of a child. Of course, had the daughter attained sanity and married and had issue, such issue would then have become the person presumptively entitled to the next eventual estate in accordance with the decisions in *Kilpatrick* v. *Johnson, Cook* v. *Loury, Central Union Trust Co.* v. *Trimble* and *Matter of Doherty* (*supra*), since having come into existence after the fulfillment of the previous conditions precedent, the law would indulge a presumption of the continuance of its life.

There remains for consideration merely the application of the principles hereinbefore discussed to the facts of the case at bar.

The wife and other children of the testator are persons presently in being who are designated as the recipients of the remainder, subject only to the condition that testator's incompetent son shall become cured. Their interests are consequently vested subject to divestment in case this extraneous event occurs. The son receives no present interest in the remainder. His acquirement of a future right therein is subject to the condition precedent that he shall become competent, which, being an alteration of his presently existing state, is one concerning which the law will indulge no presumption. It follows, on the principles hereinbefore discussed, therefore, that the wife and children now living comply with the statutory description of the " persons presumptively entitled to the next eventual estate " and should presently receive the invalidly directed income arising from the valid trust.

Enter decree on notice.